UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

TRINA ROLLIE,                                    CASE NO.: 00-6119-CIV-HUCK

      Plaintiff,                                Magistrate Judge Brown

v.

VENATOR GROUP RETAIL, INC., f/k/a
KINNEY SHOE CORPORATION,
a New York Corporation and
VENATOR GROUP, INC., f/k/a
WOOLWORTH CORPORATION,
a New York Corporation,

      Defendants.



CLARENCE MADDOX
CLERK, USDC / SDFL / MIA

_____/

## DEFENDANT'S MEMORANDUM IN SUPPORT
## OF MOTION FOR SUMMARY JUDGMENT

The Complaint in this case apparently states two distinct claims under 42 U.S.C. § 1981. Plaintiff, a former Lady Foot Locker employee, claims that she should have been allowed to travel to complete her manager training because that would have allowed her to "accelerate" her training and subsequent promotions. (Paragraph 10) The second claim is that Plaintiff, then the manager of the Pembroke Lakes Lady Foot Locker Store, should have been "promoted" to manage the Aventura Mall store in or about August of 1997. (Paragraph 11) Plaintiff is an African-American of black color and claims that the "fail[ure] to train, promote, and advance" her was a result of race discrimination. (Paragraphs. 3, 12) For the reasons that follow, Defendant is entitled to summary judgment on both claims, as well as on any allegation that Plaintiff was constructively discharged.

## I. THE APPLICABLE LEGAL STANDARD

Although cases granting and denying motions for summary judgment are legion, Defendant respectfully reminds the Court of certain applicable and governing legal principles. For example, the principle that a court considering a motion for summary judgment must view the evidence in the light most favorable to the non-moving party does not require the parties to concur on every factual point. Rule 56, Fed. R. Civ. P., "[b]y its very terms, . . . provides that the mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-248 (1986) (emphasis in original). The governing standard as to which facts are material is the relevant substantive law in the case. <u>Id.</u> at 248. Thus, the "threshold inquiry [is to determine] whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." <u>Id.</u> at 250. Further, it should be emphasized that "[c]onsideration of a summary judgment motion does not lessen the burdens on the non-moving party: the non-moving party still bears the burden of coming forward with sufficient evidence on <u>each</u> <u>element</u> that must be proved." <u>Earley v. Champion Int'l Corp.</u>, 907 F.2d 1077, 1080 (11th Cir. 1990). In affirming summary judgment in an age discrimination case, the <u>Earley</u> court also held:

> The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]. . .Rule 56(c) mandates the entry of summary judgment. . .against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. . .If the evidence is <u>merely colorable</u> or is <u>not significantly probative</u>, summary judgment may be granted.

Id. at 1080 (emphasis in original; citations omitted). A party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

The plaintiff in a race case arising under Title VII of the Civil Rights Act of 1964 bears the ultimate burden of proving that race was a determinative factor in the employment decision at issue. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248 (1981); McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). While a plaintiff is not required to show that race was the sole motivating factor, he must prove that race was a pivotal consideration in the employment decision. O'Donnell v. Georgia Osteopathic Hospital, Inc., 748 F.2d 1543, 1549-50 (11th Cir. 1984). Consistent with the framework set forth in Texas Department of Community Affairs v. Burdine, 450 U.S. 248 (1981), a typical indirect evidence race discrimination case involves three phases: (1) the plaintiff must establish a prima facie case of race discrimination; (2) the burden of production then shifts to the defendant to voice a legitimate non-discriminatory reason for the challenged employment action; and (3) the plaintiff, in order to prevail, must present evidence to establish that the defendant's proffered reason is merely pretextual and that the true motive was discriminatory. The ultimate burden of persuasion, at all times, remains with the plaintiff. St. Mary's Honor Center v. Hicks, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

Another critical consideration is that a plaintiff's ability to present a prima facie case does not necessarily defeat a motion for summary judgment in the employment discrimination realm. Palmer v. District Bd. of Trustees of St. Petersburg Junior College, 748 F.2d 595, 599 (11th Cir. 1984), citing Pace v. Southern Railway System, 701 F.2d 1383, 1391 (11th Cir.), cert. denied, 464 U.S. 1018 (1983). A plaintiff who makes out a prima facie case and presents evidence that the employer's rebuttal reason is pretextual may avoid summary judgment only if, by whatever means,

ORL1\LABOR\354667.1
21719/0021 12/5/00 11:05 AM

the record contains evidence sufficient for a factfinder to infer discriminatory animus on the part of the employer. Lawrence v. Northrop Corp., 980 F.2d 66 (1st Cir. 1992).

In short, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986), quoting Fed. R. Civ. P. 1.

## II. DEFENDANT SHOULD BE GRANTED SUMMARY JUDGMENT ON PLAINTIFF'S CLAIM FOR DISCRIMINATION IN TRAINING

### A.    This claim is barred by the applicable statute of limitations.

On May 20, 1991 Plaintiff began her employment with Lady Foot Locker in Gainesville. She underwent Phase I training, the first and most elementary of the three phases by which a Lady Foot Locker employee becomes qualified to be a store manager, while working in Gainesville. Rollie dep., p. 27.

On September 30, 1991, Plaintiff transferred to Plantation, and on December 23, 1991 to North Miami, 163rd Street. On January 18, 1993, Rollie completed her Phase II training*, and also in January 1993 she began Phase III training, the last phase. She continued her employment and training at the Aventura Mall location until August 16, 1993, when she was transferred to the Broward Mall. On September 13, 1993 she was deemed to have completed her Phase III training, and shortly thereafter became a manager-in-waiting at the Broward Mall location. During part of 1994 she was acting manager of the Westland Mall store while the manager was out on maternity leave. Plaintiff also worked at the Ommi and Galleria malls during the year. Rollie dep., p. 36. On March 13, 1995 she became the store manager at the Pembroke Lakes Mall Lady Foot Locker in Pembroke Pines, Florida. She continued in this store location--in an area that experienced explosive growth throughout the nineties--until her resignation via letter dated May 11, 1998. It is believed her last day of employment with the Defendant was May 22, 1998.

---

*Although Rollie complained in her letter to Paul Campbell, Exhibit 34 to the Statement of Material Undisputed Facts, that she "sat in a store for seven months not being trained or paid after completing Phase II," she actually did not accomplish this feat until she took and passed the "Standard Practice Manual Test on January 18, 1993." See Exhibit 2.

Ms. Rollie's claim is apparently that she should have undergone Phase III training sooner than she actually did and that this delay in her beginning Phase III training was a result of race discrimination and impacted her career adversely with Lady Foot Locker.

As the foregoing chronology demonstrates, Rollie began her Phase III training on January 19, 1993, some seven years prior to instituting the present law suit on January 12, 2000. Indeed, she completed the Phase III training September 1993 and became a store manager in March 1995. All of these events occurred more than four years prior to filing the current suit. Assuming, without conceding, that not allowing someone to travel for a portion of a management training program is indeed actionable under 42 U.S.C. § 1981, the Court nevertheless can clearly see that the "discriminatory training" claim is barred even by the generous four-year statute of limitations applied to such cases in this State. See Fla. Stat. § 95.11(3)(o); Goodman v. Lukens Steel Co., 482 U.S. 656, 660-62 (1987); Jackson v. Motel 6 Multipurposes, Inc., 1997 U.S. Dist. LEXIS 18534, 1997 WL 724429, 11 FLW Fed. D389 (M.D. Fla. 1997). Accordingly, Defendant should be granted summary judgment with respect to Plaintiff's discrimination-in-training claim on this ground alone.

B.    The alleged delay in Plaintiff's entering Phase III training does not constitute "adverse employment action."

At the outset, it is important to note the gravamen of Plaintiff's training claim: that she was delayed in beginning Phase III training because she was not "allowed to travel" to a training store to do it as other, presumably white, management trainees were. She does not allege that the substance of her training differed in any respect from that offered the other employees, and in fact she completed Phase III training, became a manager-in-waiting, and then a store manager. As noted, she did indeed successfully complete Phase III training back in 1993.

Discrimination claims asserted under 42 U.S.C. § 1981 are evaluated using the same framework as that used in Title VII cases. See Brown v. American Honda Motor Co., 939 F.2d 946, 949 (11th Cir. 1991).

Plaintiff thus must demonstrate an adverse employment action to prevail on her discriminatory training allegation. Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997). An adverse employment action need not be an ultimate employment decision, such as termination, failure to hire or constructive discharge. See Wideman v. Wal-Mart Stores, Inc., 141 F.3d 1453, 1456 (11th Cir. 1998). However, the action in question must have more than a tangential effect on the ultimate employment decision. Mattern v. Eastman Kodak, 104 F.3d 702, 708 (5th Cir. 1997); see also McCabe v. Sharrett, 12 F.3d 1558, 1563 (11th Cir. 1994). In fact, the conduct in question must rise to a substantial level before it can be cognizable as unlawful discrimination. Wideman, 141 F.3d at 1456. The conduct also must adversely affect the individual's status as an employee. Gupta v. Florida Board of Regents, 212 F.3d 571, 587 (11th Cir. 2000), quoting Robinson v. City of Pittsburgh, 120 F.3d 1286, 1300 (3rd Cir. 1997). A decision is not adverse just because an employee does not like it or disagrees with it. Doe v. DeKalb County Sch. Dist., 145 F.3d 1441, 1449, (11th Cir. 1998) citing Perryman v. West, 949 F. Supp. 815, 819 (M.D. Ala. 1996). For example, courts have held verbal reprimands and threats of termination do not rise to the level of adverse actions. Mistretta v. Volusia County Department of Corrections, 61 F. Supp. 2d 1255, 1260 (M.D. Fla. 1999). The adversity must be material, and not a de minimis inconvenience. Doe, 145 F.3d at 1453.

In determining whether an employer's actions constitute adverse employment decisions, the court must take an objective approach. Doe, 145 F.3d at 1447-49. Under such an approach, Defendant respectfully contends that any delay in Plaintiff's Phase III training, even ignoring the fact that it occurred seven years prior to the institution of this lawsuit, does not rise to the level of adverse employment action and accordingly is not actionable. For this reason as well, Defendant is due to be granted summary judgment on Plaintiff's Section 1981 claim based on discriminatory training.

III.    DEFENDANT SHOULD BE GRANTED SUMMARY JUDGMENT ON PLAINTIFF'S
        FAILURE-TO-PROMOTE CLAIM

    A.    The failure to assign or transfer Plaintiff to the Aventura Mall store is not an adverse employment action.

Plaintiff contends that she, not Meredith Infeld, should have been made the manager of the Aventura Mall Lady Foot Locker in August 1997. In the circumstances of this case, the foregoing case law is applicable and demonstrates that this non-transfer does not constitute an "adverse employment action."

At least during the relevant period, the pay of a Lady Foot Locker store manager was determined by two factors. The first was the categorization of the store based on its sales volume. This affected the manager's base pay. The second component was a bonus based on an increase in the store's volume. Rollie dep., p. 72; Bjork dep., pp. 59, 84-85. The bonus can easily exceed the rather small difference in base pay. What this means is that a store manager whose store had a lower total volume but a greater increase could make as much or more money than a manager whose store has a higher total volume but a smaller, or no, annual volume increase. And in fact that is exactly what happened in this case. As Exhibits 30 and 31 to Defendant's Statement of Undisputed Material Facts indicate, Trina Rollie had more, not less, take-home pay than Meredith Infeld during 1997, the last full year in which Rollie worked with the company. As previously noted, she terminated her employment with Lady Foot Locker voluntarily effective May 22, 1998. Under these circumstances Defendant is entitled to summary judgment on this alleged failure-to-promote claim because the selection of Infeld to manage the Aventura Mall store was not an adverse employment action as to Rollie.

2.    Plaintiff did not "apply" for the position that she now claims she should have had.

Plaintiff has no direct evidence of employment discrimination, and so she is remitted to the burden-shifting, indirect evidence paradigm of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) and its progeny. In a failure-to-promote case, one element of Plaintiff's prima facie burden is that she was qualified for and applied for the position in question. See Jones v. Firestone Tire and Rubber Co., Inc., 977 F 2d 527, 536 (11th Cir. 1992), cert. denied, 508 U.S. 961 (1993); see also Paldano v. Althin Med., Inc., 974 F. Supp. 1441, 1446 (S.D. Fla. 1996). Plaintiff cannot meet this prong because, under the circumstances of this case, she never "applied" for the Aventura Mall position.

As district manager, Jeffrey Bjork was admittedly supposed to, and did, consider the qualifications of all extant store managers within his district when considering whom to select for a vacancy. It was not necessary for current managers to fill out any kind of an "application" to be considered. Rollie dep., pp. 70-71. In this case, however, Bjork and Rollie actually discussed the Aventura Mall vacancy. Each testified in his or her respective deposition about their conversation. While their accounts do not jibe exactly, it is clear from both that Rollie never affirmatively told Bjork that she wanted the Aventura Mall position. Bjork's version is that Rollie told him she ultimately decided that she did not want the Aventura Mall position because she was doing well at Pembroke Lakes, a store whose volume had been fueled by the explosive population growth in the area and by the closure of nearby Hollywood Mall. Bjork dep., pp. 14-15, 69, 82-83; Exhibit 32 to Statement of Material Facts. Rollie's version is that she wanted to be offered the Aventura Mall position and then would decide whether or not to take it. Rollie dep., pp. 76-77. Even if the Court credits Rollie's version only, so equivocal an expression of interest cannot be said to constitute an "application" within the meaning of the criteria for a prima facie case.

      3.      <u>Meredith Infeld was at least as well qualified to manage the Aventura Mall store as the Plaintiff.</u>

Part of Plaintiff's prima facie case is to demonstrate that she is as well as or better qualified than the comparator. See <u>Jones</u>, 927 F. 2d at 533; <u>Hanley v. The Sports Authority</u>, 13 FLW Fed. D384, 390 (S.D. Fla. 2000). Infeld had been a store manager longer than had the Plaintiff, she had managed two different stores successfully while the Plaintiff had only managed one, and she also had racked up impressive sales gains at the Broward Mall store, a much older and hence less desirable location than Pembroke Lakes. As the Statement of Undisputed Material Facts demonstrates, see Exhibits 22 through 29, Infeld had had a long series of successful store visits by her district manager. Even her store's audit performance, which had previously been inconsistent, had improved significantly by the time of her selection. Exhibit 29.

The burden of persuasion in an employment discrimination case never leaves the plaintiff. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981). This fundamental fact was not altered by the recent decision in Reeves v. Sanderson Plumbing Products, Inc., 120 S. Ct. 2097 (2000). That case merely holds that , in some cases, a prima facie case plus disbelief of a pretextual reason for adverse action can support a verdict for the plaintiff.

"In a failure to promote case, a plaintiff cannot prove pretext by simply showing that she was better qualified than the individual who received the position that she wanted. A plaintiff must show not merely that the defendant's employment decisions were mistaken but that they were in fact motivated by race." Alexander v. Fulton County, 207 F.3d 1303, 1339 (11th Cir. 2000), quoted in Lee v. GTE Florida, Inc., 13 FLW Fed. C1142, 1143 (11th Cir. 2000). In Lee, the Eleventh Circuit also cited with approval the Fifth Circuit's affirmance of a district court's instruction to the jury stating that "disparities in qualifications are not enough in and of themselves to demonstrate discriminatory intent unless those disparities are so apparent as virtually to jump off the page and slap you in the face." Id. at C1443, quoting Deines v. Texas Dept. of Protective and Regulatory Servs., 164 F.3d 277, 280 (5th Cir. 1999) (explaining that "it is not the function of the jury to scrutinize the employer's judgment as to who is best qualified to fill the position.. The single issue for the trier of fact is whether the employer's selection of a particular applicant over the plaintiff was motivated by discrimination.") Of course, Plaintiff's own opinion that she was more qualified than the person chosen is not evidence and does not give rise to a material factual dispute. Lee at C1143, citing and quoting from Simms v. Oklahoma ex rel. Dept. of Mental Health and Substance Abuse Services., 165 F.3d 1321, 1329-30 (10th Cir.), cert. denied, 120 S. Ct. 53 (1999).

## IV. PLAINTIFF WAS NOT CONSTRUCTIVELY DISCHARGED

The Complaint alleges simply that Plaintiff served as manager of the Lady Foot Locker store in the Pembroke Lakes Mall until her resignation on May 23, 1998. (Paragraph 7). Although mentioned nowhere in the Complaint, constructive discharge seems to underlie Plaintiff's theory of damages in this case; at least,

that is what Defendant can infer from the extensive backpay and frontpay calculations performed by the Plaintiff's expert.

In order to prevail on her claim of constructive discharge, the Plaintiff must show that Defendant made her working conditions "so difficult that a reasonable person in her position would feel compelled to resign." In Hill v. Winn-Dixie, 934 F.2d 1518 (11th Cir. 1991), the Eleventh Circuit repeated the familiar standard by which constructive discharge claims are analyzed, stating:

> The law in this circuit with respect to constructive discharge is well established. To show constructive discharge, the employee must prove that [his or her] working conditions were so difficult or unpleasant that a reasonable person would have felt compelled to resign. Before finding a constructive discharge, this Court has traditionally required a high degree of deterioration in an employee's working conditions approaching the level of "intolerable." Id. at 1527.

A reasonable employee is one who does not "assume the worst" or "jump to conclusions too fast." Garner v. Wal-Mart Stores, Inc., 807 S.2d 1536, 1539 (11th Cir. 1987).

Therefore, to succeed on her constructive discharge claim, Plaintiff "must show that an employer's actions were impermissibly motivated by the plaintiff's race, and that these actions made the plaintiff's working conditions so intolerable that resignation is deemed involuntary." Griswold v. Alabama Department of Industrial Relations, 903 F. Supp. 1492, 1496 (N.D. Ala. 1995). To show constructive discharge, plaintiff must prove two elements: (1) that she was subject to unlawful race discrimination and (2) that her working conditions were made so difficult or unpleasant because of her race, that a reasonable person would have felt compelled to resign. As noted in Hill, before finding constructive discharge, the court has traditionally required a high degree of deterioration in an employee's working conditions, one approaching the level of "intolerable."

In Cook v. American General Life & Accident Insurance Co., 952 F. Supp. 1505 (N.D. Ala. 1996), an age discrimination case, the court was also faced with a claim of constructive discharge. Cook claimed that (1) he was given a poor quality of accounts upon his demotion, (2) that no salary adjustment was

offered to him as had been offered to a co-worker, and (3) he was denied two promotions that were given instead to two younger applicants. The court, following Eleventh Circuit law, held that while these conditions may have been unpleasant for the plaintiff, he failed to produced sufficient evidence to present a jury question as to whether a reasonable person would find these working conditions intolerable, must less that the alleged adverse actions were motivated by considerations of age. Accordingly, summary judgment was granted to the employer.

In Wardwell v. School Board of Palm Beach County, 786 F.2d 1554 (11th Cir. 1986), plaintiff alleged that the School Board had wrongfully denied her a promotion and, in doing so, had constructively discharged her from her position. Again, in analyzing Wardwell's constructive discharge claim, the Eleventh Circuit held that the employee must prove that her working conditions were so difficult or unpleasant that a reasonable person in her shoes would have felt compelled to resign, citing Bourque v. Powell Electrical Manufacturing Co., 617 F.2d 61, 65 (5th Cir. 1980). Wardwell argued that she was overburdened with work after another was appointed acting director, and that she was working long hours every day of the week. However, the Eleventh Circuit held that these working conditions could not constitute "the intolerable working conditions necessary to prove a constructive discharge," stating that "while Wardwell may have been frustrated by her failure to be appointed acting director, and while this may have been a matter of some embarrassment to her, these facts, taken together with her added work load, simply do not rise to the '"intolerable level"' at which a reasonable person would feel compelled to resign." 786 F.2d at 1558 . The appellate court was convinced that no reasonable person in Wardwell's position would have felt compelled to resign under the circumstances and reversed the district court's finding of a constructive discharge as clearly erroneous.

In Grant v. Morgan Guranty Trust Co., 49 FEP Cases 1024 (S.D. N.Y. 1986), the black female former employee claimed that she had been discriminated against on the basis of her race and sex in compensation, promotion, assignment, transfer and other terms and conditions of employment, and that

these conditions forced her to resign. She claimed that she had been constructively discharged. However, the court determined that the employer's decision not to promote plaintiff was motivated not by her race or gender but by her marginally satisfactory job performance. In so holding, the court held that the employer's job evaluations of the plaintiff were not only subjective where it rated employees on objective categories of accuracy and productivity. Likewise, the court held that the plaintiff was denied promotion in part because of her history of excessive lateness and absenteeism and had failed to show that the employer's policy in this regard was a pretext for discrimination, where there was no competent proof that the employer did not apply its attendance policies equally. Therefore, the court refused to second-guess the company's business judgment with respect to its policies.

The court in Grant further held that the employer did not constructively discharge the black female employee plaintiff when she resigned after she was denied a promotion. The court held that there were no aggravating factors that would have warranted resignation even had there been discrimination; "mere disappointment" cannot make working conditions so intolerable that a reasonable person would resign.

In Cowan v. Prudential Insurance Co., 51 FEP Cases 1435 (D. Ct. 1986), plaintiff filed an action for discrimination in employment based upon race. Cowan, a black male, had been an insurance agent for Prudential from 1975 to 1980. Claiming he was more qualified than four white agents who were promoted to sales manager in 1978 and 1979, plaintiff argued that he was not promoted by reason of his race. Cowan also claimed that Prudential's refusal to promote him, coupled with various other events, made his situation at work so intolerable that he reasonably felt compelled to resign in what was a racially motivated constructive discharge.

Despite the court's finding that Cowan was in fact discriminated against on the basis of his race, where one company official indicated that he did not even consider black employees for openings, the court nevertheless held that the black insurance agent's resignation after he was passed over three times for promotions to sales manager, did not constitute a constructive discharge. The court recognized the

ORL1\LABOR\354667.1
21719/0021 12/5/00 11:05 AM

discrimination inherent in the failure to promote plaintiff, various provocative remarks that had been made by one of his supervisors, and the failure of Prudential's high-level management to address Cowan's complaints. Despite all these findings, the court held that none of those incidents, whether viewed singly or as a whole, constituted a basis for a finding of constructive discharge, where there was no evidence that anyone wanted to force him to resign, his employment conditions were not so intolerable that a reasonable person would have felt compelled to quit, and that there was a possibility that he might have received the next promotion, despite evidence of his having been passed over three times previously for racially-based reasons.

In Bempah v. Kroger Co., 51 FEP Cases 195 (S.D. Ga. 1989), the court determined that the plaintiff had been subject to unlawful race discrimination when his store manager singled him out for fingerprinting, used offensive language by calling him a "lying nigger" and told him to go back to Nigeria, and denied him full-time status. Despite all of these instances, the court additionally held that the plaintiff, a black native of West Africa, was not constructively discharged, even though he was genuinely disturbed by his manager's conduct in singling him out for fingerprinting and for using offensive language. The court held that a reasonable person in Bempah's position would not have been compelled to resign.

Jolly v. Northern Telecom, 56 FEP Cases 549 (E.D. Va. 1991), involved a claim that defendant had discriminated against Plaintiff on the basis of race when it denied him promotion to the position of regional support manager and that it had constructively discharged him through a continuing pattern of racial discrimination. The court agreed that the employer had discriminatorily denied promotion to the black employee, but held that the plaintiff had not been constructively discharged, even though he was three times passed over for promotions that he should have received and was told that he would not be promoted in the foreseeable future, where those events did not render working conditions objectively intolerable, and where there was no evidence that his manager, who told him he would not be promoted, intended to force him to quit.

13

In Jurgens v. EEOC, 53 FEP Cases 234 (5th Cir. 1990), the defendant promoted an Hispanic male instead of plaintiff, a white forty-nine year old male, from the position of assistant regional attorney to that of regional attorney. Plaintiff sued the Equal Employment Opportunity Commission for age discrimination and alleged, inter alia, constructive discharge by the EEOC as a result of the discriminatory failure to promote.

The Fifth Circuit held that an employee's duty to mitigate damages encompasses remaining on the job when he is discriminatorily denied promotion. Moreover, the court held that the burden to prove constructive discharge rests on the employee who resigns in response to a discriminatory denial of promotion, since such an employee is presumed to have mitigated damages insufficiently. Going on to hold that the white EEOC attorney was not constructively discharged when he was discriminatorily denied promotion, even though plaintiff was subsequently told he would be demoted to the position of supervisory trial attorney in a reorganization, the court said the simple discriminatory denial of a promotion cannot reasonably be construed as a career-ending action and does not alone create such embarrassment as to constitute a constructive discharge. The court specifically held that without continuing harassment or repeated discriminatory impediment to any advancement, "dimmed future job prospects based upon the employer's past discrimination and promotions are not alone enough to support a finding of a constructive discharge." Id. at 239.

Viewed against this standard, Plaintiff's apparent claim of constructive discharge must be firmly rejected. Complaints of a delay in her beginning Phase III training and of a discriminatory failure to promote simply do not rise to a level of intolerable working conditions sufficient to support a finding of constructive discharge. Even taking Rollie's evidence in the light most favorable to her, even if her testimony were to be believed, it falls far short of what this circuit and other federal courts require to find a constructive discharge.

ORL1\LABOR\354667.1
21719/0021 12/5/00 11:05 AM

Accordingly, Defendant respectfully requests that it be granted summary judgment on Plaintiff's apparent claim of constructive discharge in this case.

Because she was not constructively discharged, Plaintiff is not entitled to backpay from the date she voluntarily left Defendant's employ, nor is she entitled to frontpay. Bourque, 617 F.2d at 65-66 & n.8; Muller v. U.S. Steel Corp., 509 F2d 923, 930 (10th Cir. 1975); see also Hill, 934 F.2d at 1527.

CONCLUSION

For all the foregoing reasons, Defendant's Motion for Summary Judgment is due to be granted in its entirety.

Respectfully submitted,

ALAN M. GERLACH, ESQ.
Florida Bar. No. 199184
BROAD AND CASSEL
390 North Orange Avenue, Suite 1100
Orlando, Florida  32801
P.O. Box 4961 (32802)
Telephone:  (407) 839-4200
Fax: (407) 425-8377
Attorneys for Defendant

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by U.S. Mail this 14th day of December, 2000 to: KELSAY D. PATTERSON, ESQUIRE, Law Offices of Michael M. Tobin, P.A., 1099 Ponce De Leon Boulevard, Coral Gables, Florida 33134-3319.

Alan M. Gerlach, Esquire
Florida Bar No. 199184
BROAD AND CASSEL
390 North Orange Avenue, Suite 1100
Orlando, Florida 32801
Post Office Box 4961 (32802-4961)
Telephone: (407) 839-4200
Facsimile: (407) 425-8377
Attorneys for Defendant

16