

NIGHT BOX
FILED

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

JAN 12 2001

CLARENCE MADDOX
CLERK, USDC / SDFL / MIA

CASE NO. 00-6119-CIV-HUCK

TRINA ROLLIE,

        Plaintiff,

vs.

VENATOR GROUP RETAIL, INC.
f/k/a KINNEY SHOE CORPORATION,
a New York Corporation, and
VENATOR GROUP, INC. f/k/a
WOOLWORTH CORPORATION,
a New York Corporation,

        Defendants.

_____/

Magistrate Judge Brown

## PLAINTIFF'S REPLY TO DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

The Plaintiff's Complaint alleges a systematic failure to promote during Plaintiff's entire tenure with the Defendant corporation. Allegations are based on a comparison to a similarly situated peer in her district, and a comparison of their respective advancement through management training and promotions into greater volume stores. As the evidence will demonstrate, Plaintiff has created a question of fact as to whether or not the pace of her management training was discriminatory, and whether or not Defendant's failure to promote was also discriminatory. The Complaint contains no allegation of constructive discharge, so Plaintiff concedes this portion of Defenant's motion, as it is irrelevant.

## THE APPLICABLE OF STANDARD

Defendant has cited the correct standard. Summary Judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact, and that the moving

party is entitled to a judgment as a matter of law." Fed. R. Civ. Pro. 56(c). Of course, the evidence and factual inferences derived therefrom must be taken in a light most favorable to the non-moving party, i.e., the Plaintiff in this case. In <u>Celotex Corp. vs. Catrett</u>, 477 U.S. 317 (1986), the Supreme Court explained that a Summary Judgment was mandated only when there was a "complete failure of proof concerning an essential element of the non-moving party's case, [as this] necessarily renders all other facts immaterial." <u>Celtox Corp.</u>, at 323. The Defendant correctly points out that the mere existence of a scintilla of evidence in opposition of the Defendant's Motion is insufficient to prevent the entry of a summary judgment. However, as demonstrated in the Plaintiff's Statement of Facts, and in this Memorandum, Plaintiff has proffered a mountain of evidence to dispute the Defendant's contention that Meredith Infeld was better suited for the position at Aventura.

As cited in the Defendant's Memorandum, <u>Anderson vs. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986) defines a disputed material fact as "one where the evidence is such that a reasonable jury could return a verdict to the non-moving party." <u>Anderson</u>, at 248. It is important to remind the Court that its function at this juncture is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." <u>Anderson</u>, at 249, 250. Respectfully, the Defendant is asking this Court to do the very thing <u>Anderson</u> prohibits, that is, weigh the evidence to determine that Meredith Infeld was at least as qualified as TRINA ROLLIE.

Defendant has a difficult burden indeed. They must demonstrate that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." <u>Matsushita Elec.</u>

Indus. Co. vs. Zenith Radio Corp., 475 U.S. 574, at 587 (1986). As we will demonstrate below, it is our opinion that the record taken as a whole could not lead a rational trier of fact to find for the Defendant in this case. The evidence is simply that strong.

## THE FAILURE TO ADVANCE CLAIM

As indicated in the Plaintiff's Statement of Facts, the evidence is disputed that MS. ROLLIE completed her Phase II training on January 19, 1993. MS. ROLLIE remembers completing her Phase II training prior to Hurricane Andrew. (Plaintiff's Exhibit "1"). She was told she could not begin her Phase III training because there were no availabilities, and therefore she was forced to wait until an opening was offered to her. Although it is clear that the Phase II completion test, attached as Exhibit "2" to Defendant's Statement of Facts, was dated January 19, 1993, it is unclear whether this test was given at the conclusion of her Phase II training or the inception of her Phase III training. A question is created because of the presence of the signature of Debra Miller, MS. ROLLIE's Phase III trainer at Aventura Mall. MS. ROLLIE's Phase II trainer was Melanie Prigeon, and had she overseen MS. ROLLIE's completion of Phase II, it is likely that she would have signed off on this test.

In addition, a review of Plaintiff's Exhibits "5 and 6" (attached), show a chronology of TRINA ROLLIE's advancement and promotion vis a vis Meredith Infeld's, which conclusively demonstrates that Ms. Infeld was advanced through her Phase II and Phase III training with little delay. In less than two years from the date that she was hired, Ms. Infeld became the manager of her own store. In contrast, it took TRINA ROLLIE a shade under four years to be given her first store. Clearly, any delay in advancing an individual through the training stages constitutes an

3

adverse employment action. It is undisputed that salary is increased from Phase I to Phase II, Phase II to Phase III, and from Phase III to management. Therefore, preventing MS. ROLLIE from completing any of these Phases would definitely constitute an adverse employment action.

The cases cited by the Defendant simply do not stand for the proposition that hindering her advancement through the stages was not an adverse employment action. Instead, they support the Plaintiff's position. As <u>Wideman v. Walmart Stores, Inc.</u>, 141 F.3rd 1435 (11th Cir. 1998) indicates, an adverse employment action need not be an ultimate employment decision, such as termination, failure to hire or constructive discharge. It need only have more than a tangential effect on the individual's employment. Clearly, hindering an employee from advancing through managerial training, and thus delaying her eventual promotion to her own store, adversely effects the individual's status as an employee. See <u>Gupta vs. Florida Board of Regents</u>, 212 F.3d 571 (11th Cir. 2000). Clearly, this failure to advance, by whatever means, (i.e., not allowing MS. ROLLIE to travel during her Stage III training) was material, and not a *de minimis* inconvenience. <u>Doe vs. DeKalb County Sch. Dist.</u>, 145 F.3d 1441, 1453 (11th Cir. 1998).

Defendant asks this Court to review this adverse employment action from an objective standpoint. We join in this request. Objectively, does delaying an individual's advancement through management training, and therefore preventing them from receiving the attendant pay raises, constitute an adverse employment action? This question can only be answered in the affirmative.

4

### STATUTE OF LIMITATIONS ISSUE

Plaintiff recognizes that there is a four year statute of limitations with respect to these cases in the state of Florida. However, if the Plaintiff can prove that there was a continuing violation, then a claim for discriminatory behavior which occurred prior to the statute of limitations period may be revived. As stated in Hamilton vs. General Motors Corp., 606 F.2d 576 (5th Cir. 1979), "equitable considerations may very well require that the filing periods not begin to run until facts supportive of a title VII charge or civil right's action are or should be apparent to a reasonably prudent person similarly situated." Hamilton, at 579. See also Reeb vs. Economic Opportunity Atlanta, Inc., 516 F.2d 924 (5th Cir. 1975). The Fifth Circuit, in Dumas vs. Town of Mt. Vernon, Alabama, 612 F.2d 974 (5th Cir. 1980), gives some guidance to this Court as to the manner of determining when the continuing violation doctrine comes into effect: "the focus is on what event, in fairness and logic, should have alerted the average lay person to act to protect his rights, or when he should have perceived that discrimination was occurring." Dumas, at 978. As explained by TRINA ROLLIE, she first became aware, in 1996, that she may have been the victim of discrimination as a result of discussions with a fellow black store manager, Deborah Sharief and the contemporaneous discovery that one of her white employees, Deshannon Phillips, was allowed to travel for her Phase III training. She filed a Complaint with Paul Campbell at the time. See Defendant's Exhibit "34". This is the point when MS. ROLLIE first began to suspect that she may have been discriminated against.

The Eleventh Circuit has recognized the continuing violation doctrine in Roberts vs. Gadsden Memorial Hospital, 835 F.2d 793 (11th Cir. 1998). The Roberts Court stated, "to revive

the otherwise time barred claim under the doctrine, it must be part of the pattern of continuing practice out of which the timely-file incident arose." Roberts, at 799. The Court provided the following guidelines to use when examining time barred claims under a continuing violation analysis: "in determining the existence vel non of such a nexus between acts, a court should not rely upon superficial factual analysis, but rather should refer to a variety of factors. Such factors include whether the claims were related in subject matter, frequency, and permanence." Roberts, at 800. Clearly, the subject matter of the time barred claims, failure to advance and/or promote, is related to the timely failure to promote claim. To satisfy the frequency requirement, "the alleged discriminatory actions should not be isolated incidents, but should be recurring." Johnson vs. Woodruff, 28 F.Supp.2d 1248 (M.D. Fla. 1998). In this case, MS. ROLLIE alleges she was not allowed to travel for Phase III, and was overlooked for promotion to the Galleria, Broward and Aventura Mall stores. This satisfies the frequency factor.

Finally, with respect to permanence, the question is whether the act was sufficiently permanent in nature as to "trigger an employee's awareness of and duty to assert his or her rights." Roberts, at 800, quoting Barry vs. Board of Supervisors of LSU, 715 F.2d 971, 981 (5th Cir. 1983). TRINA ROLLIE first became aware, in March of 1996, that she may have been discriminated against in her management training. On March 29, 1996, she wrote a letter to Paul Campbell complaining of possible discriminary treatment. This was the first time that her awareness had been triggered that she had a duty to assert her rights. Therefore, the statute of limitations should run from this date. Because this Complaint was filed on January 12, 2000, the otherwise time barred claims regarding Foot Locker's failure to allow her to travel, and failure to

advance, were revived under the continuing harm doctrine, as they are part of a continuing practice out of which the timely filed incident arose.

## PLAINTIFF'S FAILURE TO PROMOTE CLAIM

It is simply wrong to suggest that being overlooked for promotion to a store with a volume in excess of 1.2 million was not an adverse employment action with respect to TRINA ROLLIE when it is undisputed that 1) the higher the store's base volume, the higher the manager's base pay, and 2) a transfer to a higher volume was considered a promotion. (2 Depositions of Jeffrey Bjork, attached as Plaintiff's Exhibit "20"). Clearly, being passed over for promotion to a larger volume store constitutes an "adverse employment action." And, it is disingenuous to suggest that because TRINA ROLLIE had more take home pay than Meredith Infeld during 1997, that she did not suffered an adverse employment action. A cursory examination of Defendant's Exhibits "30" and "31", Infeld and ROLLIE's 1997 W-2's, will demonstrate that Infeld was paid more, but deferred an amount to her 401K, which left her with slightly less take home pay then ROLLIE. Furthermore, comparison of the W-2's prior to 1997 demonstrate that MS. ROLLIE received less pay than Ms. Infeld during the three years prior to 1997.(See box 3 of the W-2 exhibits attached as Plaintiff's Exhibits "3 and 4")

With respect to the Defendant's contention her claim is somehow barred because she did not make application for the position of Aventura, this position is simply without merit. It is undisputed that managers do not apply for open stores. (Plaintiff's Composite Exhibit "7") (Deposition of Jeffrey Bjork, at 36, 37) (Defendant's Memorandum of Law, at 8). If Defendant's position is true, then it is immune from claims for failure to promote because no

CASE NO. 00-6119-CIV-HUCK
Page 8 of 12

manager has ever applied for an opening in the history of the corporation. In support of its argument that ROLLIE did not apply, the Defendant uses statements of Jeffrey Bjork, even though, pursuant to <u>Reeves vs. Sanderson</u>, 530 U.S. 113 (U.S. 2000), this Court must necessarily disregard all evidence favorable to the moving party that the jury is not required to believe. Therefore, the only testimony that this Court need consider is ROLLIE's testimony that she was never offered the Aventura Mall position and that Bjork seemed to be trying to talk her out of considering it before he even offered it to her. (Deposition of Rollie, 71-77). This creates a question of fact for the jury.

## <u>MEREDITH INFELD WAS NOT AS QUALIFIED TO</u>

## <u>MANAGE THE AVENTURA MALL STORE AS THE PLAINTIFF</u>

The standard to present a *prima facie* case is not, as Defendant states, that Plaintiff must demonstrate that she was as well as or better qualified than the comparator. Instead, the standard is as follows: "To establish [a circumstantial] *prima facie* case of discriminatory failure to promote, [Plaintiff] must show that 1) [she] was in a protected group; 2) [she] was not given the promotion; 3) [she] was qualified for the position; and 4) someone outside of the protected group was given the position." <u>Standard vs. A.B.E.L. Services, Inc.</u>, 161 F.3d 1318, 1333 (11th Cir. 1998). MS. ROLLIE has clearly presented a *prima facie* case of discriminatory failure to promote. Put simply, African Americans are a protected group; she was not promoted to the Aventura store; she was clearly qualified for the position, as demonstrated below, and Ms. Infeld, who is caucasian, and outside of the protected group, was given the position. A *prima facie* case has been established.

8

Furthermore, the evidence overwhelmingly demonstrates that TRINA ROLLIE was *more* qualified than Meredith Infeld to be promoted to the Aventura Mall store. The specifics for this are clearly set forth in the Plaintiff's statement of undisputed facts, which demonstrate that MS. ROLLIE had a significantly higher level of achievement than Ms. Infeld, and a significantly lower record of substandard audits, evaluations, and store visits. The most damning evidence of all, and really all that is required to rebut the Defendant's claim that Ms. Infeld was as qualified as MS. ROLLIE to take over the Aventura store was the fact that it was MS. ROLLIE, not Ms. Infeld, who received the Manager of the Year award for 1997, the year Ms. Infeld was promoted to the Aventura store. If Ms. Infeld was better qualified, she would have received the award.

The Plaintiff concurs that the burden of pursuasion in an employment discrimination case does not leave the Plaintiff. However, the burden is set forth quite clearly in Reeves, supra, which may have rendered Alexander vs. Foltun County bad law, despite Defendant's reliance on it. Reeves holds that a Plaintiff's *"prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer has unlawfully discriminated." Reeves, at 148. See also Durley vs. Apac, Inc., 14 Fla. L. Weekly Fed. C281 (11th Cir. 2000) There is no longer a requirement that the Plaintiff, having presented sufficient evidence to reject the employer's explanation, must always introduce additional independent evidence of discrimination. The quote used by the Defendant from Alexander seems to indicate that additional independent evidence of discriminatory intent is necessary. This is simply not the case.

Instead, <u>Lee vs. GTE Florida, Inc.</u>, 226 F.3d 1249 (11th Cir. 2000) holds that "evidence showing an employer hired a less qualified applicant over the Plaintiff may be probative of whether the employer's proffered reason for not promoting the Plaintiff was pretextual. Also, see <u>Alexander vs. Foltun County</u>, 207 F.3d 1303 (11th Cir. 2000) and <u>Taylor vs. Runyon</u>, 175 F.3d at 868 (11th Cir. 1999) **(stating that evidence of a Plaintiff's superior experience "would permit a jury to disbelieve" that the employer would actually rely on the chosen candidate's experience when they promoted him).**

<u>Lee</u> also goes on to explain what the Fifth Circuit meant by the "jump off the page and slap you in the face" standard for differences in qualifications quoted by the Defendant in its Memorandum. The phrase should be understood to mean that "disparities in qualifications must be of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the Plaintiff for the job in question." <u>Lee</u>, at 1254. It is doubtful that any reasonable person, when given the choice between a Manager of the Year and any other manager, would chose to promote another manager over the Manager of the Year. The disparities in qualifications between Infeld and ROLLIE are significant, and they do slap you in the face. This is especially true when one considers that the Defendant's own standard as expressed by their district manager, regional vice president, and their fair employment practices manager is **not** just promoting a qualified manager, but promoting the MOST qualified manager as demonstrated by their objective measurable numbers.

Again, we remind this Court that it need not make value judgments, need not weigh evidence and need not determine who is better qualified. It must merely examine whether the

Plaintiff has proffered sufficient evidence to create a question of fact on that very issue and a question of fact on whether the Defendant's stated reasons for Infeld's advancement are pretextual. The only reasons set forth by the Defendant were that 1) TRINA ROLLIE did not apply for the Aventura location, and 2) that Ms. Infeld was at least as qualified. In response to the first reason, there is evidence in the record that MS. ROLLIE was never offered the position. In response to the second reason, it is difficult to compare the qualifications of the two individuals, and say with a straight face, that Ms. Infeld was at least as qualified. Therefore, the Plaintiff has met the burden of proving a *prima facie* case of discrimination under the <u>McDonald Douglas</u> circumstantial evidence standard, and has set forth sufficient evidence to reject the employer's stated reasons as pretextual. Indeed, Judge Joan Lenard ruled for a similarly situated Plaintiff in a case involving this same Defendant on  virtually identical issues (Plaintiff's Exhibit "A", attached).

WHEREFORE, Plaintiff respectfully requests that this Court enter an Order denying Defendant's Motion for Summary Judgment in its entirety.

CASE NO. 00-6119-CIV-HUCK
Page 12 of 12

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was mailed this

January 11, 2001 to Alan M. Gerlach, Esq., Broad and Cassel, 390 North Orange Avenue, Suite

1100, Orlando, FL 32801.

FORD & SINCLAIR, P.A.
Two Datran Center, Penthouse 1-C
9130 S. Dadeland Boulevard
Miami, FL 33156
(305) 670-2000

BY: _____
DOUGLAS F. EATON
FLORIDA BAR NO. 129577

12



PLAINTIFF'S
EXHIBIT
A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.97-1724-CIV-LENARD

DEBRA SHARIEF,

    Plaintiff,

vs.

KINNEY SHOE CORP.,
a New York corporation, et al.,

    Defendants.

_____/



FILED by _____ D.C.

FEB 1 2 1999

CARLOS JUENKE
CLERK U.S. DIST. CT.
S.D. OF FLA. · MIAMI

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
## MOTION FOR SUMMARY JUDGMENT

    **THIS CAUSE** came before the Court upon Defendant Kinney Shoe's and Defendant

Woolworth's Motion for Summary Judgment (DE 42), filed on August 31, 1998, and upon Plaintiff's

Motion for Oral Argument (DE 77), filed on October 21, 1998. Having considered the motions and

responses, and being otherwise advised in the premises, the Court hereby

    **ORDERS AND ADJUDGES** that Defendants' Motion for Summary Judgment (DE 42) is

**GRANTED IN PART AND DENIED IN PART.** Specifically, Defendants are granted summary

judgment, with regards to Plaintiff's claims for hostile work environment and constructive discharge.

However, Defendants are denied summary judgment with regards to Plaintiff's claims for retaliation

and failure to promote. Plaintiff's Motion for Oral Argument (DE 77) is **DENIED.** As to

Defendants' motion to limit damages (DE 42) and Defendants' motion for fees and costs (DE 42),

the Court now **RESERVES RULING.**

Finally, the Court **DISMISSES WITHOUT PREJUDICE** the parties' numerous pending motions in limine and other evidentiary motions (DE's 81, 82, 83, 84, 85, 86, 87, 90, 96, 116, 118 & 119). The parties may refile these motions within thirty (30) days of trial.


## BACKGROUND

Plaintiff Debra Sharief worked for Lady Foot Locker for seven years, beginning in April, 1990. Am. Compl. at 2. On April 21, 1997, Plaintiff resigned her position with Lady Foot Locker. Joint Pre-Trial Stip. at 4. Since then she has been employed with Lane Bryant. Id. at 5. During her employment with Lady Foot Locker, Plaintiff Sharief alleges that she was subject to various forms of race discrimination.

Plaintiff Sharief claims that Defendant Kinney Shoe and Defendant Woolworth subjected her to a hostile work environment, retaliation after Plaintiff complained of the discriminatory treatment, discriminatory failure to promote, and constructive discharge, all in violation of both 42 U.S.C. § 2000(e) et seq (Title VII), and of 42 U.S.C. § 1981. Am. Compl. ¶¶ 20 & 22. Defendants now move for summary judgment, and to limit Plaintiff's damages based on the after acquired evidence rule, and for their fees and costs incurred in this action.[1]

------------------------------------

[1] Examining Defendants' Motion, the Court is unsure whether Defendants intended to move for summary judgment only as to the constructive discharge claim and the after-acquired evidence issue, or whether Defendant intended to move for summary judgment as to all of Plaintiffs' claims. Since this Court has the power to grant summary judgment sua sponte, and since Defendants did not label their motion as a "partial summary judgment" motion, the Court will analyze whether any of Plainitff's claims survive Defendants' motion for summary judgment.

# STANDARD

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 157 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Supreme Court explained the summary judgment standard as follows:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986). The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249-50 (1986). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. <u>Anderson</u>, 477 U.S. at 248; <u>see also</u> <u>Barfield v. Brierton</u>, 883 F.2d 923, 933 (11th Cir. 1989). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions of file, together with affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material

fact." <u>Celotex</u>, 477 U.S. at 323.

Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the non-moving party. The nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" <u>Celotex</u>, 477 U.S. at 324; <u>see also</u> Fed. R. Civ. P. 56(e). In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). That party must demonstrate that there is a "genuine issue for trial." <u>Matsushita</u>, 475 U.S. at 587. An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." <u>Matsushita</u>, 475 U.S. at 587. <u>See also</u> <u>Anderson</u>, 477 U.S. at 249.


## DISCUSSION

"Both [Title VII and 42 U.S.C. § 1981] have the same requirements of proof and use the same analytical framework". <u>Standard v. A.B.E.L. Services, Inc.</u>, 161 F.3d 1318, 1330 (11th Cir. 1998). The Court analyzes Plaintiff's claims under the circumstantial evidence framework established in <u>McDonnell Douglas</u>. <u>McDonnell Douglas Corp. v. Green</u>, 93 S.Ct. 1817 (1973). The Court finds that Plaintiff Sharief has established a prima facie case of discrimination as to her claims regarding retaliation and failure to promote, but that Plaintiff has failed to establish a prima facie case of discrimination regarding her claims of hostile work environment and constructive discharge.

4

Finally, the Court reserves ruling both on Defendant's motion for application of the after-acquired evidence rule to limit Plaintiff's damages, and on Defendant's motion for fees and costs.

## Hostile Work Environment

On the record before it, the Court finds that Plaintiff has failed to allege racial harassment that is "sufficiently severe or pervasive [so as] to alter the conditions of employment".  During an exhaustive deposition, Plaintiff described a limited number of comments, which taken in their totality, were neither pervasive nor abusive in nature.[2]

In order to establish a hostile work environment claim:

> [plaintiff] must demonstrate that the actions of the defendants altered the condition of the workplace, creating an objectively abusive and hostile atmosphere.  Harris v. Forklift, 114 S.Ct. 367, 370-71 (1993) ("When the workplace is permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' Title VII is violated.") (internal citations omitted). ... [T]he racial slurs ... had to be so commonplace, overt and denigrating that they created am atmosphere charged with racial hostility.  In deciding whether a hostile environment was created factors to consider include the frequency of the discriminatory conduct, the severity of the discriminatory conduct, whether the conduct is threatening or

---

[2]  For example, Plaintiff complains that her district manager, Jeff Bjork, used the term "ghetto blaster" to her, instead of the term "radio".  Sharief Dep. at 145.  Further, Plaintiff complains that Mr. Bjork referred to Paul Newman, a black man, as "a real sharp boy", even though Mr. Bjork described white men as "men" and not as "boys".  Sharief Dep. at 169.  During a meeting of local store managers, Mr. Bjork requested that Plaintiff and another black manager refrain from sitting together, as their sitting together was "segregating" his meeting.  Sharief Dep. at 152.  Plaintiff alleges that another manager, Laura Fredrickson, referred to Plaintiff as the "black sheep" of the Lady Footlocker family.  Sharief Dep. at 61.

The Court notes that these remarks were made over the seven years of Plaintiff's employment with Defendant.  Since these remarks were infrequent, and not always directly aimed at Plaintiff, the Court concludes that even taken together, these alleged racial slurs were neither severe nor pervasive.

humiliating, and whether the conduct unreasonably interferes with the plaintiff's performance at work.

Edwards v. Wallace Community College, 49 F.3d 1517, 1521-22 (1995) (some internal citations and quotations omitted).

Because Plaintiff has failed both to allege and to support on the record her hostile work environment claim, Defendant's Motion for Summary Judgment as to this claim is **GRANTED**.

## Constructive Discharge

Similarly, Plaintiff has failed to allege or to support on the record that she was constructively discharged by Defendant. "To successfully claim constructive discharge, a plaintiff must demonstrate that working conditions were so intolerable that a reasonable person in her position would have been compelled to resign." Poole v. Country Club of Columbus, Inc., 129 F.3d 551, 553 (11th Cir. 1997) (internal quotations omitted). Though Plaintiff was not promoted to certain stores and instead had to watch as allegedly less-qualified or equally-qualified co-workers were promoted instead, and though Plaintiff complains that her district manager gave her the "cold shoulder" Sharief Dep. at 344, these complaints simply do not constitute intolerable working conditions, such that a reasonable person would have felt compelled to resign. See e.g., Hill v. Winn-Dixie Stores, Inc., 934 F.2d 1518, 1527 (11th Cir. 1991) ("formal written reprimand ..., the criticism by [plaintiff's] supervisors ..., and the withdrawal of [plaintiff's manager's] customary support ... did not create intolerable working conditions that would compel a reasonable person to resign, especially in light of the short duration of time ... and [defendant's] attempts to rectify the situation); see also, Cook v.

American General Life and Acc. Ins. Co., 952 F.Supp. 1505, 1511 (M.D. Ala. 1996) (holding that being given a poor quality of accounts, not being offered a salary adjustment, and being denied two promotions was insufficient to support a constructive discharge claim).

Because Plaintiff has failed both to allege and to support on the record her constructive discharge claim, Defendant's Motion for Summary Judgment as to this claim is **GRANTED**.

## Retaliation

Plaintiff complains of Defendant's retaliatory actions towards her, subsequent to her complaint regarding Defendant's alleged discriminatory practices towards her. On March 4, 1996, Plaintiff formally complained to Kathy Davenport, Defendant's President. Joint Pre-Trial Stip. at 4. Plaintiff received a letter from Paul Newman, dated April 15, 1996, stating that an investigation into her complaints had been completed and that appropriate actions had been taken. Id. at 4. Subsequent to this exchange of letters, Plaintiff alleges, Defendant and/or Defendant's agents took retaliatory actions against her. Id. at 2. For example, Plaintiff alleges that Mr. Bjork, her district manager, was no longer supportive of her subsequent to her complaint and that Mr. Bjork discriminatorily denied her request for a supplemental audit. Sharief Dep. at 343-44.

> To establish a prima facie case of retaliation under Title VII, a plaintiff must show that (1) [she] engaged in statutorily protected expression; (2) [she] suffered an adverse employment action; and (3) there is some causal relationship between the two events. ... [T]he causal link requirement under Title VII must be construed broadly: a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated."

Olmsted v. Taco Bell Corp., 141 F.3d 1457, 1460 (11th Cir. 1998) (internal quotations and citations

omitted). "[T]he plaintiff need not prove the underlying claim of discrimination which led to [her]

protest, however, the plaintiff must have had a good faith belief that the discrimination existed."

Holifield v. Reno, 115 F.3d 1555, 1566 (11th Cir. 1997) (internal quotations omitted).

As part of her allegation that Mr. Bjork's assistance and support decreased after Plaintiff's

complaint was filed, Plaintiff alleges that Mr. Bjork refused her December, 1996 request for an extra

audit. In response to Plaintiff's request, Mr. Bjork wrote, in a letter dated January 22, 1997:

> ... your request has been denied. Currently there does not exist any precedence for
> your unusual demand; therefore, you need or your next audit [sic] will be in
> accordance with the normal audit cycle. If you disagree with the conclusion reached
> in this matter, you may contact Larry Holter in Stores Auditing and Finance Service
> Center ...

Gugel Dep. at 187. Plaintiff's counsel and Mr. Gugel reviewed a letter written to Tony Fernandez,

a non-black manager. Gugel Dep. at 193. In response to Mr. Fernandez's request for an audit, Don

Hottinger, Lady Footlocker's Audit Coordinator for the southern region, wrote:

> I empathize with your situation. We also do not want you in audit results trouble.
> I have spoken with your district manager and also auditor Jens Skaar. Mr. Skaar will
> be contacting you shortly to determine a plan of action. Don't give up or lower your
> standards. There will be more awards in your future.

Gugel Dep. at 193.

Given the discrepancy in these responses to similar requests, one made by a black manager

and one made by a non-black manager, and given Defendants' admission that Mr. Bjork did have the

authority to order additional audits Gugel Dep. at 188, the Court concludes that Plaintiff has

established a prima facie case of retaliation. Defendants have proffered no evidence as to a

"legitimate, nondiscriminatory" reason for these divergent responses, so as to shift the burden of

8

persuasion back to Plaintiff.[3]  Therefore, Defendants' Motion for Summary Judgment as to Plaintiff's

claim for retaliation, is **DENIED.**[4]

**Failure to Promote**

Plaintiff Sharief alleges that Defendant failed to promote her, a black employee, and instead

chose to promote less-qualified, non-black employees.  Plaintiff's pleadings and counsel's questions

during depositions specifically reference the promotion of three "white" employees: a) Celia

---

[3]    See Standard v. A.B.E.L. Services, Inc., 161 F.3d 1318, 1332 (11th Cir. 1998) (once a
defendant has proffered "legitimate, nondiscriminatory reasons" for its actions, the burden of persuasion
returns to plaintiff to "create a genuine issue of fact as to whether the reasons advanced are pretextual").

[4]    The record also contains a great deal of evidence that tends to negate Plaintiff's claim of
retaliation, subsequent to her formal complaint to Kathy Davenport.  Most notably, the Court refers to
this remarkable exchange, taken from Plaintiff's deposition:

> Q: Do you have any evidence that Mr. Bjork provided the same line of Donna Karan
> clothing or shoes [to another manager, when he had not provided them to you]?
> A: Shoes.
> Q: Shoes to another manager who was not black?
> A: I have no idea, but what do you mean, "not black"?  When I am speaking of things
> like that I don't -- I am trying to figure out where you come up with color as part of
> things with him ordering things.  I am telling you how the environment I was working in
> got to the point that it was unbearable to work.  I am not saying he didn't get those
> because I am black.  It could well maybe be that, but I don't know that for sure.
> Q: Well, do you know why he didn't get the Donna Karan line of shoes for you?
> A: I don't know why Mr. Bjork does anything he does. ...
> Q: ... You said there was a different demeanor in Mr. Bjork prior to your resignation.
> Also please tell me more specifically what you mean by that.
> A: Basically I feel that he was very short with me.  There was never really anything
> said, or you know, anything that really was before the past six months and that was after
> I filed the complaint against him.  I just got the cold shoulder after that.

Sharief Dep. at 342-44.  However, since a factual issue exists as to another part of Plaintiff's claims, the
Court must deny Defendant's motion for summary judgment.

Gonzalez's [5] promotion to the Dadeland store in August, 1996; b) Denise Ryan's (or, Denise Raby's) promotion to the Aventura store, in February 1997; and c) Meredith Infield's promotion to the Aventura store in February of 1998.[6]  Gugel Dep. at 102-03 .  Examining the promotions of these three non-black managers, the Court finds that Plaintiff has established a prima facie case of discriminatory failure to promote, under the circumstantial evidence framework explained in McDonnell Douglas.

"To establish [a circumstantial] prima facie case of discriminatory failure to promote, [Plaintiff] must show that (1) [she] was in a protected group; (2) [she] was not given the promotion; (3) [she] was qualified for the position; and (4) someone outside of the protected group was given the position." A.B.E.L., 161 F.3d at 1333.[7]

---

[5]  Plaintiff does not distinguish between white/non-Hispanic and white/Hispanic.

[6]  Though Meredith Infield's promotion came after Plaintiff Sharief had already left the company, the Court is willing to consider evidence regarding Ms. Infield's promotion, to the extent that the evidence sheds light on Defendant's promotion practices.

The Court does not at this time take into consideration Plaintiff's allegations that Meredith Infield, a white woman, was allowed to travel to another store for Phase III training, while Plaintiff was denied the same privilege.  Plaintiff admitted that neither she nor Trina Rollie has personal knowledge of this fact, Sharief Dep. at 44-46.

Further, though counsel referred to Tony Fernandez' 1997 promotion to a different store within Foot Locker, the Court does not now consider this promotion.  Given that Plaintiff worked for Lady Foot Locker, and given Mr. Gugel's statement that Tony Fernandez was transferred back to Foot Locker at Foot Locker's request Gugel Dep. at 200-01, it is not clear that Plaintiff would have been considered for a similar transfer to Foot Locker.

[7]  As part of her failure to promote claim, Plaintiff has alleged that Defendant and its agents transferred employees suspected of theft to Plaintiff's store.  As explained by Plaintiff, transferring employees suspected of theft to Plaintiff's stores resulted in Plaintiff suffering bad audits.  See e.g., Sharief Dep. at 103.  Mr. Bjork told Plaintiff that he transferred Natalie Murdock, a black employee suspected of stealing from the company, to Plaintiff's store so that "in the event that they would have to

There is no dispute that Plaintiff has shown the first, second, and fourth elements of the prima facie case. As a "black" woman, Plaintiff is a member of a protected class. Secondly, Plaintiff was not promoted to manager of either the Aventura, Dadeland, or Bayside stores (the three largest Lady Footlocker outlets). As to the fourth element, Plaintiff has shown that three non-black employees, Celia Gonzalez, Denise Raby, and Meredith Enfield, were promoted to these positions.

The Court finds that a genuine issue of material fact exists as to the third element. Mr. Gugel, Defendant's Regional Vice-President, identified the following criteria to be used in promotion decisions: "profit performance, profit turnaround, audits, sales, personal sales of the manager and the measurable numbers, against, multiples, accessories, apparel, how he or she does on that." Gugel Dep. at 79. Reviewing the evidence proffered as to the respective qualifications of Celia Gonzalez, Denise Ryan, Meredith Infield, and Debra Sharief see generally Gugal Dep. at 103-24, 126-54 & 209-19, the Court finds that Plaintiff has established an issue of fact as to whether she was qualified for these promotions.

---

get rid of her ... he would rather [that Natalie Murdock] be working under a black manager so that they could not run a risk of a racial discrimination lawsuit." Sharief Dep. at 100. Mr. Bjork's alleged statement, if believed by the jury, may constitute direct evidence that Mr. Bjork considered race when making staff transfer decisions.

The parties have not addressed whether Mr. Bjork's statement qualifies as direct evidence of Defendants' discriminatory intent in not promoting Plaintiff. See e.g., Hill v. Metropolitan Atlanta Rapid Transit Authority, 841 F.2d 1533, 1539 (11th Cir. 1988) ("the plaintiffs' evidence ... fits neatly into neither [the circumstantial nor direct] category of proof"); see also Trotter v. Bd. of Trustees of Univ. of Alabama, 91 F.3d 1449, 1453-54 (11th Cir. 1996) (discussion of direct evidence). However, the existence of direct evidence changes Defendants' burden of rebuttal. See e.g., Wall v. Trust Co. of Georgia, 946 F.2d 805, 810 (11th Cir. 1991).

The parties are advised to brief this issue, prior to trial, for the Court.

11

Plaintiff has established a prima facie case of discriminatory failure to promote.[8] Defendants' Motion for Summary Judgment, as to Plaintiff's claim for discriminatory failure to promote, is **DENIED.**

**Limitation of Plaintiff's Damages**

Defendants further move this Court to limit Plaintiff's remedies, pre-trial, based on the after acquired evidence rule. See McKennon v. Nashville Banner Publishing Co., 115 S.Ct. 879, 883 (1995); see also Wallace v. Dunn. Const. Co., Inc., 62 F.3d 374, 379 (11th Cir. 1995) ("In order to

---

[8]   Once a defendant-employer has presented "legitimate, nondiscriminatory reasons" for its actions, plaintiff-employee must then:

> create a genuine issue of material fact as to whether the reasons advanced are pretextual. In other words, [plaintiff] must provide sufficient evidence to allow a reasonable fact finder to conclude that the proffered reasons were not actually the motivation for [defendant's actions. Plaintiff] may do this (1) by showing that the legitimate nondiscriminatory reasons should not be believed; or (2) by showing that, in light of all of the evidence, discriminatory reasons more likely motivated the decision than the proffered reasons.

Id. at 1332. "In order to directly attack [defendant-employers proffered reasons, plaintiff-employee] must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could find all of those reasons unworthy of credence." Id. at 1333 (internal citation omitted). Plaintiff's failure to produce such evidence will support the granting of summary judgment for defendant-employer. Id. See also, Isenbegh v. Kight-Ridder Newspaper Sales, Inc., 84 F.3d 1380, 1386-87 (11th Cir. 1996) ("[A] plaintiff must show both that the defendant's reason was false and that the real reason was discriminatory.").

Giving Plaintiff, as the non-movant for summary judgment, every benefit of the doubt, the Court concludes that a reasonable juror could find pretext amongst Defendant's reasons and rationales. Upon examination of Defendant's proffer of legitimate and non-discriminatory reasons for the promotions -- that the non-black employees were somehow better qualified or better suited to the stores at issue -- the Court finds that a reasonable juror could find that "in light of all the evidence, discriminatory reasons more likely motivated the [promotion] decisions".

12

benefit from the after acquired evidence rule announced in <u>McKennon</u>, [defendant-employer] must prove that 'the misconduct revealed ... was so grave that [plaintiff's] immediate discharge would have followed its disclosure in any event.'").

Defendants allege that Plaintiff lied on her original application with Lady Foot Locker, by omitting any reference to her prior termination from Jordan Marsh for theft.[9] However, Defendants have not submitted a copy of Plaintiff's original application, nor have they offered evidence that their employment form asks about prior instances of theft.[10] Plaintiff argues that she had no affirmative duty to volunteer any information regarding her departure from Jordan Marsh, and that she did not actually lie. Resp. at 1-2. The <u>Wallace</u> court narrowly referred to "cases in which the after-acquired evidence concerns the emaployee's misrepresentations in a job application or resume". <u>Wallace</u>, 62 F.3d at 379. The Court now reserves ruling on this issue, until the parties establish whether or not Defendants' application form solicited this information.

---

[9] Defendants also allege that Plaintiff sexually harassed an employee under her supervision, Kim Mateo, while employed as a Lady Foot Locker manager. Assuming that this evidence is admissible at trial, the Court finds that this alleged harassment is an insufficient foundation to apply the after-acquired evidence rule. In light of the discipline taken against Mr. Bjork, which fell far short of termination, Gugel Dep. at 162-63 and in light of Mr. Gugel's statements that he would not decide to terminate an employee prior to an investigation by Fair Employment, Gugel Dep. at 242-43, the Court finds that Defendants have not established that they would have "immediately" discharged Plaintiff based on this alleged misconduct.

[10] Ms. Orlopp's affidavit does not directly address this issue. Ms. Orlopp states that "[t]he application for employment specifically states that an employee may be terminated if any of the information contained in the application is false. ... Had Ms. Sharief indicated on her employment application that she had been fired from Jordan Marsh for theft ... she would not have been hired." Orlopp Aff. ¶¶ 5,7.

13

<u>Defendant's Motion for Fees and Costs</u>

The Court now **RESERVES RULING** on Defendant's Motion for Fees and Costs (DE 42).

## CONCLUSION

For the reasons set out above, Defendants' Motion for Summary Judgment (DE 42) is

**GRANTED IN PART AND DENIED IN PART.** Defendants' Motion is granted as to Plaintiff's

claims for hostile work environment and constructive discharge, and as to limitation of Plaintiff's

damages. Defendants' Motion is denied as to Plaintiff's claims for retaliation and failure to promote.

Plaintiff's Motion for Oral Argument (DE 77) is **DENIED.** The Court **RESERVES RULING** on

Defendant's motion to limit Plaintiff's damages (DE 42) and Defendant's Motion for Fees and Costs

(DE 42).

**DONE AND ORDERED** in Chambers at Miami, Florida, this _12_ day of February, 1999.


JOAN A. LENARD
UNITED STATES DISTRICT JUDGE


cc:  Kelsay D. Patteson, Esq.                      Jack R. Elliot, Esq.
     Law Office of Michael M. Tobin, P.A.          390 N. Orange Ave.
     1099 Ponce de Leon Blvd.                      Suite 1100
     Coral Gables, FL 33134-3319                   Orlando, FL 32801

14