UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

TRINA ROLLIE,                                    CASE NO.: 00-6119-CIV-HUCK

            Plaintiff,                           Magistrate Judge Brown

v.

VENATOR GROUP RETAIL, INC., f/k/a
KINNEY SHOE CORPORATION,
a New York Corporation and
VENATOR GROUP, INC., f/k/a
WOOLWORTH CORPORATION,
a New York Corporation,

            Defendants.

_____/

## DEFENDANT'S REPLY TO PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pursuant to General Rule 7.1C, Local Rules of the U.S. District Court for the Southern District of Florida, Defendant VENATOR GROUP RETAIL, INC., by and through its undersigned counsel, hereby submits its Reply to Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment in the above-styled case.

### Limitations

It is worth remembering that Plaintiff's Complaint is pled purely under 42 U.S.C. § 1981. The conspicuously dated cases that Plaintiff cites for the proposition that her admittedly timely (under section 1981) failure-to-promote claim involving the Aventura Mall Lady Foot Locker can breathe life into her time-barred discrimination-in-training claim either involve consideration of whether a Title VII charge is timely or determinations that the section 1981 limitations period should not be extended to cover time-barred claims. Plaintiff's citation to <u>Roberts v. Gadsden Memorial Hosp.</u>, 835 F.2d 793, 799, 800 (11th Cir. 1998) is particularly troublesome. All of the portions of the <u>Roberts</u> opinion quoted and relied upon by Plaintiff appear under Section IIC. of that opinion. However, the court, on <u>sua sponte</u> reconsideration, later

vacated Part IIC. in its entirety. Roberts v. Gadsden Memorial Hosp., 850 F.2d 1549 (11th Cir. 1989).

Since the portion of the Roberts opinion citing Berry v. Board of Supervisors of LSU, 715 F.2d 971, 981

(5th Cir. 1983), with approval has been withdrawn, the Berry opinion is of dubious authority in this circuit.

As noted, Plaintiff cites no authorities supporting its proposition that a timely (that is, filed within a

four-year limitations period) section 1981 claim predicated on a failure to promote can revitalize a time-

barred claim based on discrimination in training. The court in EEOC v. Akron Nat'l Bank & Trust Co., 22

FEP Cases 1665 (N.D. Ohio 1980), held that a continuing failure-to-promote violation could not revitalize a

stale claim of discriminatory job assignments. Recently, the Eleventh Circuit has held, in the context of a

racial discrimination in employment case under 42 U.S.C. § 1983, that even a series of denied promotions

does not constitute a single "continuing violation" of the Equal Protection Clause. The court applied the

appellate authority on the continuing violation doctrine developed under Title VII to determine that each

failure to promote is a "discrete violation[ ], each triggering its own statute of limitations period". Thigpen v.

Bibb County, Ga., Sheriff's Dept., 13 FLW Fed. C 1110, 1113 (11th Cir. July 7, 2000, as amended August

30, 2000). Thigpen was cited with approval by the Eleventh Circuit in Carter v. West Publishing Co., 13

FLW Fed. C 1099 (11th Cir. September 7, 2000). The Carter court cited Thigpen for the proposition that

"this Circuit distinguishes between the present consequence of a one time violation, which does not extend

the limitations period, and the continuation of that violation into the present, which does." Id., at C 1101,

quoting Thigpen, 216 F.3d 1314, 1326 (11th Cir. 2000) (quoting Calloway v. Partners Nat'l Health Plans,

986 F.2d 446, 448 (11th Cir. 1993).

Plaintiff has not raised a material issue of fact or law with respect to her claim of discriminatory

treatment in training, and so Defendant is entitled to summary judgment on this claim.

<u>Failure to Promote</u>

While Plaintiff accurately presents the elements of a prima facie case as described by Standard v.

A.B.E.L. Services, Inc., 161 F.3d 1318, 1333 (11th Cir. 1998), that case is not the sole authority in this

2

circuit on the issue. Even after A.B.E.L., this circuit continues to include a showing that the plaintiff is at least as well qualified as her comparator as a necessary element of the prima facie failure-to-promote case. Lee v. GTE Florida, Inc., 13 FLW Fed. C 1142 (11th Cir. September 13, 2000), postdates both Reeves v. Sanderson Plumbing Products, Inc., 120 S. Ct. 2097 (2000), and, by some two years, A.B.E.L. Services. The Lee court set forth these elements:

> To establish a prima facie case of Title VII sex discrimination in a promotional decision, a plaintiff must prove: (1) that she is a member of a protected minority; (2) that she was qualified and applied for the promotion; (3) that she was rejected despite these qualifications; and (4) other equally or less qualified employees who are not members of the protected minority were promoted. See Taylor v. Runyon, 175 F.3d 861, 866 (11th Cir. 1999).....

> In a failure to promote case, a plaintiff cannot prove pretext by simply showing that she was better qualified than the individual who received the position that she wanted. A plaintiff must show not merely that the defendant's employment decisions were mistaken but that they were in fact motivated by sex. See Alexander v. Fulton County, 207 F.3d 1303, 1339 (11th Cir. 2000).....

Id. at C1143; see also Hanley v. The Sports Authority, 13 FLW Fed. D 384, 386 (S.D. Fla. August 18, 2000). Even a very recent case cited by Plaintiff includes the requirement that the claimant be as well or better qualified than the successful comparator as part of the prima facie failure-to-promote case. Durley v. APAL, Inc., 14 FLW Fed. C 281, 84 FEP Cases 1177, 2000 U.S. App. LEXIS 33725 at *6 (11th Cir. Dec. 26, 2000). Contrary to Plaintiff's assertion, nothing in Reeves v. Sanderson alters this prima facie case or lessens the authority of Alexander v. Fulton County, 207 F.3d 1303 (11th Cir. 2000), itself cited with approval by the Eleventh Circuit in the post-Reeves, Lee decision.

Plaintiff speaks in conclusory fashion of her superior qualifications to those of Meredith Infeld to manage the Aventura Mall locations for Lady Foot Locker. She bases this allegation on three assumptions. The first is that Rollie was the manager of the year and so should automatically be considered superior to any other candidate for a specific position. Plaintiff's argument on this score loses sight of the fact that ultimately this is a race discrimination case and that the person who selected Rollie to be manager of the

3

year is the very person whom Plaintiff accuses of discrimination, district manager Jeffrey Bjork. How can this selection be evidence of racial discrimination in employment? Further, the selection as manager of the year was based on the entire calendar year 1997, and was not made until 1998. Thus, it considers factors that occurred after the relevant decision was made to assign Ms. Infeld to the Aventura Mall managership effective early August 1997.

Plaintiff's second argument that she must have been better qualified is that her store had greater percentage sales volume increases than did stores managed by Meredith Infeld. But there are many reasons why a specific retail store experiences sales gains. As noted previously in this case, the Pembroke Lakes area wherein Ms. Rollie's store was located grew exponentially, one of the very fastest in the country during the relevant time period. Additionally, a nearby rival mall was closed. It is hardly surprising under these circumstances that a new location experienced significant sales gains during the years in question, regardless of the ability of the store manager. Thus, the difference in store volume, for which Ms. Rollie was recognized by the employer and by Mr. Bjork, is not the clinching evidence of superior qualifications that Plaintiff imagines.

Third, Plaintiff points to superior performance on store audits. In this regard, it is worth recognizing that store evaluation reports and employee performance appraisals include many evaluative criteria other than performances on store audits. Among these other criteria are ability to sell or liquidate "matchpoint" (older items), merchandising, store display, ability to sell multiple products in the same transaction, profit margin and profit percentage and the like. Even within the realm of the store audits, shrinkage control--on which Plaintiff focuses her entire attention--is but one criterion.

Even looking at the relevant performances of the stores managed by Rollie and Infeld from the sole criterion of shrinkage control does not result in the superiority that Plaintiff claims. Exhibit 1 sets forth in tabular form information from the company store audit reports that appears as portions of Plaintiff's Composite Exhibits 8 and 9 to Plaintiff's Reply to Defendant's Statement of Material Undisputed Facts.

4

Each of these audit results, including as they do separate "operations" and "results" rating beginning April 18, 1996, demonstrates the percentage of shrinkage as well. These are the audit results that were available to Mr. Bjork at the time he made his decision whom to assign to manage Aventura. [1] Even ignoring the myriad other factors that go into the determination of what constitutes a successful store manager and whom should be promoted, the shrink control results on which Plaintiff seems to base so much of her case show a virtual dead heat. The average shrink percentage at the Pembroke Lakes Mall store managed by Trina Rollie, based on five audits between October 1995 and July 1997, was .47%. The average shrink percentage at the two stores managed by Meredith Infeld from January 1995 through February 1997, was .51%. If one excludes the extraordinarily high shrinkage reflected on the September 8, 1996 store audit, the result of the theft of "an entire rounder display" containing at least thirty units, then the average for the other six Infeld store audits is .41%, .06% lower than the average for Trina Rollie's store. Thus, focusing on shrinkage control as reported in the store audits, the sole criterion on which Ms. Rollie seems to base so much of her contention, yields a determination that both store managers were approximately equal performers.

Plaintiff simply has failed to present a prima facie case. Even if she were held to have presented such a case, she has insufficient evidence to go to a jury on the issue of pretext and to support a verdict of race discrimination in this 42 U.S.C. § 1981 case.

With respect to the opinion of Judge Lenard in the Sharief case attached as Exhibit A to her Memorandum in Response to the Motion for Summary Judgment, as Plaintiff's counsel well knows and is reflected at page 2, footnote 1, of that opinion, Defendant did not in fact move for summary judgment on, and did not brief, all of Plaintiff's claims. Attached as Composite Exhibit 2 to this Reply are Defendant's

---

[1] Thus, the August 5, 1997 "checkout" audit at Broward, performed on Ms. Infeld's last day as manager, is not included.

Motion for Summary Judgement and the Memorandum of Law in Support of Motion for Summary Judgment in the Sharief case.

For all the foregoing reasons, Defendant respectfully requests that the Court grants its Motion for Summary Judgment since there is no material issue of fact or law justifying a trial in this case.

Respectfully submitted,

ALAN M. GERLACH, ESQ.
Florida Bar. No. 199184
BROAD AND CASSEL
390 North Orange Avenue, Suite 1100
Orlando, Florida  32801
P.O. Box 4961 (32802)
Telephone:  (407) 839-4200
Fax: (407) 425-8377
Attorneys for Defendant

6

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by U.S.

Mail this _6th_ day of February, 2001 to: KELSAY D. PATTERSON, ESQUIRE, Law Offices of

Michael M. Tobin, P.A., 1099 Ponce De Leon Boulevard, Coral Gables, Florida 33134-3319.

Alan M. Gerlach, Esquire
Florida Bar No. 199184
BROAD AND CASSEL
390 North Orange Avenue, Suite 1100
Orlando, Florida 32801
Post Office Box 4961 (32802-4961)
Telephone: (407) 839-4200
Facsimile: (407) 425-8377
**Attorneys for Defendant**

7

Re: Rollie v. Venator Group Retail, Inc.

## AUDIT RESULTS COMPARISON FOR TRINA ROLLIE and MEREDITH INFELD

| Date | Manager | Operations Rating | Results Rating | Comments |
|------|---------|-------------------|----------------|----------|
| 1/30/95 | Infeld | | | Over allowable at .16%[1]; test checks match almost exactly; store in excellent condition |
| 6/7/95 | Infeld | | | Under allowable at .12%; some layaway problems; store in good shape |
| 8/6/95 | Infeld | | | Over allowable at .69%; credit cards improperly done |
| 10/19/95 | Rollie | | | Under allowable at .36%[2] |
| 11/27/95 | Infeld | | | Over allowable at .80%, test checks match closely with actual results |
| 4/10/96 | Rollie | | | Under allowable at 40%; problems with layaway procedure being followed correctly; test checks match closely with results |
| 4/18/96[3] | Infeld | Excellent | Commendable | Under allowable at .21%; paperwork and inventory control at their highest level |
| 9/4/96 | Rollie | Satisfactory | Good | Under allowable at .43%; problems with layaway procedure and backup sales checks; needs to do more test checks |
| 9/8/96 | Infeld | Satisfactory | Unacceptable | Over allowable at 1.16%; discount policy violation; 59 units short due to theft |
| 2/3/97 | Rollie | Satisfactory | Unacceptable | Over allowable at .73%; damaged merchandise not being handled correctly; needs to do more test checks |
| 2/20/97 | Infeld | Satisfactory | Good | Under allowable at .46%; some problems with layaway procedure |
| 7/1/97 | Rollie | Satisfactory | Good | Under allowable at .43%; some problems with credit card imprints; one late bank deposit |

[1] This number was a corrected figure from .53%; see "Last Audit Result" column on VENA 000057, part of Plaintiff's Composite Exhibit 8.
[2] This number is taken from the "Last Audit Result" column on VENA 000752, first page of Plaintiff's Composite Exhibit 9.
[3] This is the first audit report for which the indicated ratings were expressed in writing.

Exhibit 1

ORI.1\LABOR\34521\9.1
2171590021.10\600.10.48 AM

Rollie Average Shrink Percentage:    .47%   (based on 5 audits)

Infeld Average Shrink Percentage:    .51% (based on 7 audits)

ORL1\LABOR\345219.1
217190021\10/6/00 10:48 AM

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

DEBRA SHARIEF,

               Plaintiff,

v.

KINNEY SHOE CORPORATION,
a New York corporation,
and WOOLWORTH CORPORATION,

               Defendants.

_____/

CASE NO. 97-1724 CIV-LENARD
MAGISTRATE : JUDGE GARBER

### DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

COME NOW, Defendants, KINNEY SHOE CORPORATION, a New York corporation, and WOOLWORTH CORPORATION by and through undersigned counsel, and pursuant to Rule 56(b) of the Federal Rules of Civil Procedure, and move this Court for an Order granting Defendants' Motion for Summary Judgment, and as grounds therefore, Defendants state as follows:

1.      Under the facts of this case, even when taken in a light most favorable to Plaintiff, Plaintiff has failed to state a cause of action for either race discrimination or retaliation in violation of the relevant provisions of either Title VII of the Civil Rights Act of 1964, as amended, or 42 U.S.C. § 1981.

2.      Under the facts of this case, even when taken in a light most favorable to Plaintiff, Plaintiff has failed to state a cause of action for constructive discharge under either Title VII of the Civil Rights Act of 1964, as amended, or under 42 U.S.C. § 1981.

ORL1\LABOR\21H368 1
217 19/0001 8/31/98 2 34 PM

*Composite Exhibit 2*

3.    Under the facts of this case, Plaintiff's damage remedies, if she prevails, must be limited by the "After-Acquired Evidence" rule.

4.    This Motion for Summary Judgment is based upon the certified depositions of Plaintiff, dated October 7, 1997 and April 14, 1998, the affidavits of David Nelson and  Sharon Orlopp,   and upon the allegations set forth in Plaintiff's Complaint.

WHEREFORE, Defendants respectfully request this Court to enter Summary Judgment against Plaintiff and award Defendants their costs and attorneys' fees incurred in defense of this matter.

Respectfully submitted,

BROAD & CASSEL

JACK R. ELLIOTT, ESQUIRE
Florida Bar No.:  251666
390 North Orange Avenue, Suite 1100
Post Office Box 4961
Orlando, Florida 32802-4961
(407) 839-4200
(407) 425-8377 – Facsimile
ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by U.S. Mail to MICHAEL M. TOBIN, ESQUIRE, 1099 Ponce de Leon Boulevard, Coral Gables, FL 33134, this 31st day of August, 1998.

JACK R. ELLIOTT, ESQUIRE

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

DEBRA SHARIEF,

        **Plaintiff,**

v.

KINNEY SHOE CORPORATION,
a New York corporation, and
WOOLWORTH CORPORATION,

        **Defendants.**

_____/

CASE NO. 97-1724 CIV-LENARD

MAGISTRATE : JUDGE GARBER

### DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
### MOTION FOR SUMMARY JUDGMENT

COME NOW, Defendants, KINNEY SHOE CORPORATION and WOOLWORTH

CORPORATION, by and through their undersigned counsel, and file this their Memorandum of

Law in support of Defendants' Motion for Summary Judgment.

### STATEMENT OF THE CASE

On or about April 11, 1996, Plaintiff, DEBRA SHARIEF (hereinafter "Sharief") filed a

Charge of Discrimination with the Florida Commission on Human Relations and the Equal

Employment Opportunity Commission (hereinafter "EEOC"). She alleged in those Charges of

Discrimination that she had been subjected to racial slurs by her immediate supervisor, and that after

complaining to Kinney Shoe Corporation's fair employment office of the alleged discrimination by

her supervisor, she was subjected to retaliation by having an unannounced store audit on March 21,

1996. On June 11, 1996, Sharief filed another Charge of Discrimination with the EEOC, again

alleging that she had been subjected to retaliation as a result of her having earlier filed a charge with

the EEOC, the retaliation taking the form of an average performance evaluation for the year ending 1995.

On or about June 5, 1997, Plaintiff filed a lawsuit against the Kinney Shoe Corporation, alleging violation of her rights under 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, as amended.  Plaintiff filed an Amended Complaint and Demand for Jury Trial, once again citing violations of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, as amended.  On or about September 26, 1997, Plaintiff filed yet another Amended Complaint and Demand for Jury Trial, again alleging violations of 42 U.S.C. § 1981 and Title VII.  On October 10, 1997, Defendant timely filed its Answer and Defenses to the Amended Complaint, denying Plaintiff's allegations of race discrimination and retaliation under 42 U.S.C. § 1981 and Title VII.

## SUMMARY JUDGMENT STANDARD

This Circuit clearly holds that summary judgment should only be entered when the moving party has sustained its burden of showing the absence of a genuine issue as to any material fact when all of the evidence is viewed in a light most favorable to the non-moving party.  Sweat v. Miller Brewing Co., 708 F.2d 655 (11th Cir. 1983).  However, the plain language of Rule 56(c), Fed. R. Civ. P., mandates the entry of summary judgment, after adequate time for discovery and upon motion, against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-323 91 L. Ed.2d 265, 106 Sup. Ct. 2548 (1986).  The Celotex court also said: "Rule 56(e) therefore requires the non-moving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories

2

and admissions on file,' designate specific facts showing there is a genuine issue for trial." <u>Celotex</u>

<u>Corp.</u>, at 274. In meeting this burden, the non-moving party "must do more than simply show that

there is a metaphysical doubt as to a material fact." <u>Matsushita Electric Industrial Corp. v. Zenith</u>

<u>Radio Corp.</u>, 475 U.S. 574, 586, 89 Lawyers Ed.2d 538, 106 Sup. Ct. 1348 (1986).

## PLAINTIFF HAS FAILED TO STATE A CLAIM FOR CONSTRUCTIVE DISCHARGE

Taking the facts in the light most favorable to Plaintiff, all of the incidents complained of by

Plaintiff do not meet the standard enunciated by either the United States Supreme Court or the

United States Court of Appeals for the Eleventh Circuit as necessary to establish a claim for

constructive discharge.

In order to prevail on her claim of constructive discharge, the Plaintiff must show that

Defendants made her working conditions "so difficult that a reasonable person in her position would

feel compelled to resign". In <u>Hill v. Winn-Dixie</u>, 934 F.2d 1518 (11th Cir. 1991), the Eleventh

Circuit repeated the familiar standard by which constructive discharge claims are analyzed, stating:

> The law in this circuit with respect to constructive
> discharge is well established. To show constructive
> discharge, the employee must prove that [his or
> her] working conditions were so difficult or un-
> pleasant that a reasonable person would have
> felt compelled to resign. Before finding a construc-
> tive discharge, this court has traditionally required
> a high degree of deterioration in an employee's
> working conditions approaching the level of 'in-
> tolerable'. <u>Id</u>. at 1527.

A reasonable employee is one who does not "assume the worst" or "jump to conclusions too

fast". <u>Garner v. Wal-Mart Stores, Inc.</u>, 807 F.2d 1536, 1539 (11th Cir. 1987).

Plaintiff must first establish a prima facie case of discrimination, and, having done that, tie

the prima facie case to a claim of constructive discharge. A plaintiff may establish a prima facie

3

case by indirect evidence, by direct evidence of discriminatory intent or by statistical proof of a pattern of discrimination. Buckley v. Hospital Corporation of America, Inc., 758 F.2d 1525 (11th Cir. 1985). Plaintiff has presented no statistical evidence to this Court to demonstrate that Kinney Shoe (Lady Footlocker) discriminated against its Black employees; to the contrary, the company has produced evidence that in South Florida, where Sharief worked, it has promoted a number of African-American assistant managers into managerial positions (Debra Sharief, Jackie Freeman, Yolanda Johnson, Trina Rollie), and the head of the Company's Fair Employment office is an African-American male.

Plaintiff may also try to establish discrimination by proving the elements of the analysis set forth in McDonnell-Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 688 (1973). Under the McDonnell-Douglas test, Plaintiff must produce evidence that the four prongs of that test were met: (1) she was a member of a protected group, (2) an adverse employment action took place, (3) she and a similarly-situated non-protected person received dissimilar treatment, and (4) sufficient evidence, either circumstantial or direct, exists to infer a nexus or causal connection between . . . her race and the different treatment. Nix v. WLCY Radio, 738 F.2d 1181 (11th Cir. 1984).

Moreover, Plaintiff must prove her prima facie case by a preponderance of the evidence. The preponderance of the evidence in a Title VII case means establishment of a "legally mandatory, reputable presumption". Burdine, 450 U.S. 354, n.7.

Defendants maintain that Plaintiff cannot even prove a prima facie case of discrimination. While Defendants admit that she meets the first prong of the McDonnell-Douglas test, that she was a member of a protected group (African-American female), she has completely failed to produce

4

evidence that she has met any of the other prongs of the test.

Plaintiff cites as evidence of discrimination only the remarks made by her manager, Mr. Bjork, none of which, standing along, constitute evidence of either racial animus or discriminatory intent. The other situations described by Plaintiff (the "play", the nightclub incident, the Halloween party) were either off site or involved individuals not employed by the Company. Sharief's claims of discrimination in her failure to be promoted from manager of a small store to manager of a large store are not backed by evidence, but by conjecture.

## PLAINTIFF CANNOT MEET THE TEST
## FOR CONSTRUCTIVE DISCHARGE UNDER ELEVENTH CIRCUIT LAW.

Florida is still an "at will" state – an employee may be terminated for a good reason, a bad reason or no reason at all. Since an employee may be terminated for any reason not expressly prohibited by federal or state law, there is no cause of action for "constructive discharge" unless the alleged constructive discharge has a nexus to unlawful discrimination.

Therefore, to succeed on her constructive discharge claim, Plaintiff "must show that an employer's actions were impermissibly motivated by the plaintiff's race, and that these actions made the plaintiff's working conditions so intolerable that resignation is deemed involuntary". Griswold v. Alabama Dept. of Industrial Relations, 903 F.Sup. 1496 (N.D. Ala. 1995). To show constructive discharge, Plaintiff must prove two elements: (1) that she was subjected to unlawful race discrimination, and (2) that her working conditions were made so difficult or unpleasant because of her race, that a reasonable person would have felt compelled to resign. Before finding constructive discharge, the court has traditionally required a high degree of deterioration in an employee's working conditions, approaching the level of "intolerable".

In this case, there is little evidence the Plaintiff's working conditions changed at all. She resigned because she did not like the working conditions at Lady Footlocker.

5

In <u>Cook v. American General Life & Accident Insurance Co.</u>, 952 F.Sup. 1505 (N.D. Ala. 1996), the court was faced with a claim of constructive discharge by the plaintiff, Cook. Cook claimed that (1) he was given a poor quality of accounts upon his demotion, (2) that no salary adjustment was offered to him as had been offered to a co-worker, and (3) that he was denied two promotions that were given instead to two younger applicants. The court, interpreting Eleventh Circuit law, held that while these conditions may have been unpleasant for Cook, Cook failed to produce sufficient evidence to present a jury question as to whether a reasonable person would find these working conditions intolerable, much less that the alleged adverse actions were motivated by considerations of age. Accordingly, summary judgment was granted to the employer.

In <u>Hill v. Winn-Dixie Stores</u>, 4 IER Cases 1014 (M.D. Fla. 1989), the produce manager of a grocery store quit after receiving a written reprimand for failing to ensure that someone would conduct mandatory weekly inventory at a time when she was on jury duty. The court noted that in order to prove a constructive discharge claim, the plaintiff must show that her working conditions were made so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign, citing <u>Wardwell v. School Board of Palm Beach County</u>, 786 F.2d 1554, 1557 (11th Cir. 1986). The test is what a reasonable person would have decided; it is immaterial what a given plaintiff may have decided. <u>Guthrie v. J. C. Penney Co.</u>, 803 F.2d 202, 207 (cite).

The court, in analyzing the <u>Hill</u> case, found it undenied that an unpleasant relationship existed between Hill and her supervisors. The court also noted that plaintiff, in her fourteen years with Winn-Dixie, had never before received a written reprimand from either her store manager or her district manager, and she was deeply shocked when she did receive one, tendering her resignation two weeks thereafter.

6

The court began its analysis by noting that an employer may discipline or threaten to discharge an employee for any reason – even a reason based on erroneous conclusions or facts - as long as the action is not for an unlawful reason.  Nix v. MLCY Radio, 738 F.2d 1181, 1187 (cite)(11th Cir. 1984), Furnco Construction Corp. v. Water, 438 U.S. 567, 577-78 (cite).  The court held that while reasonable minds could have concluded that the written reprimand to plaintiff was too harsh in view of her otherwise long-term excellent record, nevertheless, the court concluded that reasonable minds could not disagree with the fact that plaintiff was not constructively discharged under the facts of the case.

In Wardwell v. The School Board of Palm Beach County, 786 F.2d 1554 (11th Cir. 1986), the plaintiff, Wardwell, alleged that the school board had wrongfully denied her a promotion and in doing so, constructively discharged her from her position.  In analyzing Wardwell's constructive discharge claim, the Eleventh Circuit held that the employee must prove that her working conditions were so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign.  Bourque v. Powell Electrical Manufacturing Co., 617 F.2d 61, 65 (5th Cir.).  In reviewing the evidence of the case, the Eleventh Circuit was convinced that no reasonable person in Wardwell's position would have felt compelled to resign under the circumstances set forth.

Wardwell argued that she was overburdened with work after another was appointed acting director, and that she was working long hours every day of the week.  However, the Eleventh Circuit, taking into consideration the above-mentioned working conditions in her existing job, held that these working conditions could not constitute "the intolerable working conditions necessary to prove a constructive discharge", stating that "while Wardwell may have been frustrated by her failure to be appointed acting director, and while this may have been a matter of some embarrassment to her, that these facts, taken together with her added work load, simply did not rise

7

to the 'intolerable level' at which a reasonable person would feel compelled to resign". Therefore, the Eleventh Circuit concluded that the District Court's finding of a constructive discharge was clearly erroneous, reversing.

In Thompson v. John L. Williams Company, Inc., 686 F. Sup. 315 (M.D. Ga. 1988), the plaintiff Thompson brought an action against defendant alleging that she had been subjected to unlawful sex discrimination and was constructively discharged. In that case, the court noted the general rule that "if the employer deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntarily resignation, then the employee has encompassed a constructive discharge and is liable for any illegal conduct involved therein as if it had formally discharged the aggrieved employee . . .", citing Buckley v. Hospital Corp. of America, Inc., 758 F.2d 1525, 1530 (11th Cir. 1985).

In that case plaintiff identified several conditions that supposedly supported her constructive discharge. She pointed to the assumption by a co-manager of certain of her duties and responsibilities. She contended that the schedule prepared for her required her to spend an inordinate amount of time away from her family at particular times, and further contended that defendant's offering her the opportunity to return to her old job as a waitress was degrading and humiliating. However, after carefully considering these conditions both individually and collectively, the court determined that no constructive discharge had occurred, because they were not so intolerable that a reasonable person would be compelled to resign.

ORL 1\LABOR\217615 1
21719/0001 08/31/98 5.12 PM

## CONSTRUCTIVE DISCHARGE
## IN THE CONTEXT OF RACE DISCRIMINATION

In Grant v. Morgan Guarantee Trust Co. 49 FEP Cases 1024 (DSD New York 1986), a black female former employee claimed that she had been discriminated against on the basis of her race and sex in compensation, promotion, assignment, transfer and other terms and conditions of employment, and that these conditions forced her to resign. She claimed that her resignation was a "constructive discharge." However, the court determined that the employer's decision not to promote plaintiff was motivated not by her race or gender but by her marginally satisfactory job performance. In so holding, the court held that the employer's job evaluations of the plaintiff were not wholly subjective where it rated employees on objective categories of accuracy and productivity. Likewise, the court held that to the extent the black female plaintiff was denied promotion in part because of her history of excessive lateness and absenteeism, she had failed to show that the employer's lateness and absenteeism policy was a pretext for discrimination, where there was no competent proof that the employer did not apply its attendance policies equally. Therefore, the court refused to second-guess the company's business judgment with respect to its policies.

The court in Grant also held that the employer did not constructively discharge the black female employee plaintiff when she resigned after she was denied a promotion. The court held that there were no aggravating factors that would have warranted resignation even had there been discrimination; "mere disappointment" cannot make working conditions so intolerable that a reasonable person would resign.

In Cowan v. Prudential Insurance Company, 51 FEP Cases 1435 (D. CT 1986), plaintiff, Cowan brought an action for discrimination in employment based upon race. Cowan, a black male, had been an insurance agent in the Stamford Connecticut District of defendant, Prudential Insurance

9

Company of America from 1975 to 1980. Claiming that he was more qualified than four white agents who were promoted to sales manager in 1978 and 1979, he argued that he was not promoted by reason of his race. Cowan also claimed that Prudential's refusal to promote him, coupled with various other events, made his job situation so intolerable that he reasonably felt compelled to resign, and therefore, Prudential's actions constituted a racially motivated constructive discharge.

Despite the court's finding that Cowan was in fact discriminated against on the basis of his race, where one company official indicated that he did not even consider black employees for openings, the court nevertheless held that the black insurance agent's resignation after he was passed over three times for promotion to sales manager, did not constitute constructive discharge. In so holding, the court recognized the discrimination inherent in the failure to promote plaintiff, various provocative remarks that had been made by one of Cowan's supervisors, and the failure of Prudential's high-level management to address plaintiff's complaints. Despite all of those findings, the court held that none of those incidents, whether viewed singly or as a whole, constituted a constructive discharge, where there was no evidence that anyone wanted to force him to resign, his employment conditions were not so intolerable that a reasonable person would have felt compelled to quit, and there was a possibility that he might have received the next available promotion, despite evidence of having been passed over three times for racially-based reasons.

In Bempah v. Kroger Co., 51 FEP Cases 195 (S.D. Ga. 1989), the court determined that the plaintiff, Joseph Bempah, had been subjected to unlawful race discrimination when his store manager singled him out for fingerprinting, used offensive language by calling him a "lying nigger" and told him to go back to Nigeria, and denied him full-time status. However, despite all of those incidents, the court also held that the plaintiff, a black native west-African, was not constructively discharged, even though he was genuinely disturbed by the conduct of his manager in singling him

10

about for fingerprinting and using offensive language, since a reasonable person in his position would not have been compelled to resign.

In Jolly v. Northern Telecom, 56 FEP Cases 549 (E.D. VA 1991), the plaintiff, Edward Jolly, alleged that the defendant, Northern Telecom, had discriminated against him on the basis of race when it denied him promotion to the position of regional support manager and by constructively discharging him through a continuing pattern of racial discrimination. The court agreed that the employer had discriminatorily denied promotion to the black employee, but held that the black employee had not been constructively discharged, even though he was three times passed over for promotions that he should have received and was told that he would not be promoted in the foreseeable future, where these events did not render working conditions objectively intolerable, and where there was no evidence that his manager, who told him he would not be promoted, intended to force him to quit.

In Bozé v. Branstetter, 53 FEP Cases 1630 (5th Cir. 1990), a black former employee appealed from a district court's grant of Summary Judgment dismissing his case against Chevron Corporation for constructive discharge. The Plaintiff, Bozé was a black attorney who worked for the Gulf Oil Corporation in its Houston law department. Defendant Branstetter also worked there as an attorney. Branstetter had never supervised Bozé, but Bozé alleged that on at least one assignment, Branstetter had behaved in a racist manner towards Bozé, and he also alleged that Branstetter on several occasions helped Bozé's immediate supervisor prepare performance evaluations which criticized Bozé's work, despite the fact that Branstetter never supervised Bozé.

The court held that despite Bozé's claim that his supervisor criticized his performance without knowing anything about his professional activities and gave him a critical performance evaluation, he was not constructively discharged, since neither the alleged discrimination nor the

11

complained-of working conditions constituted intolerable working conditions. The court also held that Bozé should have pursued either or both courses of pursuing an internal grievance or filing an EEO charge, stating that "we have held that employees who oppose unlawful discrimination best serve the policies underlying Title VII which accords them legal protection, if they attack that discrimination 'within the context of existing employment relationships'".

In Gurgens v. EEOC, 53 FEP Cases 234 (5th Cir. 1990), the EEOC promoted an Hispanic male instead of Plaintiff, who was then forty-nine years old, from the position of assistant regional attorney to the position of regional attorney. Plaintiff sued the Equal Employment Opportunity Commission for age discrimination, and, among other things, alleged constructive discharge by the EEOC's failure to promote him, the white forty-nine year old male, in favor of a Hispanic male.

The 5th Circuit held that an employee's duty to mitigate damages encompasses remaining on the job when he is discriminatorily denied promotion. Moreover, the court held that the burden to prove constructive discharge rests on the employee who resigns in response to discriminatory denial of promotion, since such an employee is presumed to have mitigated damages insufficiently.

The court went on to hold that the white EEOC attorney was not constructively discharged when he was discriminatorily denied promotion to the position of regional attorney, even though he was subsequently told he would be demoted to the position of supervisory trial attorney in a reorganization, since the simple discriminatory denial of a promotion cannot reasonably be construed as a career-ending action, and alone does not create such embarrassment as to constitute constructive discharge. The court specifically held that without continuing harassment or repeated discriminatory impediment to any advancement, "dimmed future job prospects based upon the employer's past discrimination and promotions are not alone enough to support a finding a constructive discharge" id. at 239.

12

In <u>Harriston v. Chicago Tribune Co.</u>, 63 FEP Cases 319 (7th Cir. 1993), a black female employee filed charges of race discrimination under both Title VII of the Civil Rights Act of 1964, as amended, and 42 U.S.C. § 1981. In addressing plaintiff's claim of constructive discharge, the court found that the black former employee who had resigned was not constructively discharged, even where her allegations included the following: she was not allowed to supervise two white subordinates, she was reprimanded for no reason, she was refused participation in a management incentive fund, she was forced out of the management position, she was promised a position that she was never given, she had a major account taken away from her and was given one of the least lucrative sales territories, she was excluded from office activities, she was reprimanded for asking about changes in policy, she was falsely accused of having poor sales and was threatened with discipline, she had her telephone calls monitored for the use of an eaves-dropping devise and her private vehicle was damaged and vandalized in the employer's private parking lot. Even with all of these allegations, the court held that she had not shown her working conditions were so onerous or demeaning that she had been compelled to leave. Accordingly, the district court's grant of Summary Judgment in favor of Defendants on the constructive discharge issue was upheld. In <u>Green v. Kinney Shoe Corporation</u>, 54 FEP Cases 566 (D.D.C. 1989), the Plaintiff Green alleged that the Defendant Kinney Shoe Corporation had discriminated against him on account of his race and by its actions had constructively discharged him. After finding that Kinney Shoe had not discriminated against Plaintiff on the basis of his race, the court also concluded that the Plaintiff had not been constructively discharged from Foot Locker, stating that to succeed on his claim, Plaintiff would have to have shown that the Defendant deliberately made working conditions so intolerable that a reasonable person in the position would have been forced to resign. The court went on to note that although the Plaintiff maintains that he was distraught over his failure to get a management job,

13

the only significant grievance Plaintiff had with Foot Locker concerned his failure to get a management position, "hardly the sort of activity that may result in a constructive discharge".

In Tidwell v. Meyer's Bakeries, 71 FEP Cases 1284 (8th Cir. 1996), the court held that the black supervisor who was not selected for the position of assistant production superintendent, a position that went to a white supervisor, and who thereafter quit was not constructively discharged. Rather than presenting one event as the defining moment in his employment at Defendant Meyer's, Plaintiff Tidwell pointed a number of incidents and circumstances spread over several years which he claims, taken together, formed a complex tapestry of discrimination. At trial, Plaintiff offered evidence that Meyer's acted in a racially discriminatory manner in making shift assignments. Plaintiff argued that his poor shift assignments had the secondary effect of impeding his salary advancement, forcing his to do more hands-on work, and requiring him to work at less desirable times. Supervisor's raises were based on performance evaluations conducted annually, and first shift supervisors were more likely to receive a high evaluation because the workers under them were better.

Plaintiff also claimed that he had not been promoted to assistant production superintendent because of his race, having been allegedly been told by a member of management that he would not be made assistant production superintendent because the company did not want two African-Americans at that management level. The court reiterated its position that "frustration and embarrassment at not being promoted do not make work conditions sufficiently intolerable to constitute constructive discharge." Maney v. Brinkley Municipal Waterworks & Sewer Department, 802 F.2nd 1073, 1075-76 (8th Cir. 1986).

In Ward v. Bechtel Corporation, 72 FEP Cases 1373 (5th Cir. 1997), Diana Ward, an African-American woman, sued her former employer Bechtel Corporation, alleging workplace

14

discrimination based on her sex, race and national origin in violation of Title VII of the Civil Rights Act of 1964. The district court granted Summary Judgement in favor of Bechtel on all counts, and the 5th Circuit considered the case de novo on appeal. Among her claims, Ward attempted to establish that she had been constructively discharged. The 5th Circuit, in analyzing her claim, stated as follows:

> "To show constructive discharge, an employee must offer evidence that the employer made the employee's working conditions so intolerable that a reasonable employee would feel compelled to resign."

Barrow v. New Orleans S.S. Association, 10 F.3[rd], 292, 297 (5th Cir. 1994). The 5th Circuit held that Ward failed to introduce evidence that her decision to resign was reasonable based on any of the factors identified in Barrow. She did not, for example, demonstrate that Bechtel demoted her, cut her salary, or reassigned her to remedial or degrading work, any of which would tend to support a finding a constructive discharge. Likewise, Ward failed to present evidence sufficient that Bechtel placed her in an intolerable work environment. Accordingly, the 5th Circuit agreed with the district court that a reasonable person in Ward's position would not have felt compelled to resign.

In the instant case, Sharief has complained about a number of incidents occurring from 1992 until her voluntary resignation in April 1997. The remarks attributed to her supervisor, Jeffrey Bjork, are, at most, inappropriate (e.g., asking Sharief if she had a "ghetto blaster"), they are not in and of themselves evidence of either race discrimination or racial animus. Significantly, some of the remarks attributed to Bjork are indications of racial sensitivity, not insensitivity. Bjork told Sharief that he felt he needed more black managers (a remark that offended Sharief), and when the incident involving the non-employee occurred at a company function, Bjork described the individual who created the incident as "ignorant." Bjork promoted Debra Sharief to her position as manager, as he did a number of other African-American females. Sharief's "sensitivity" to

witnessing a play put on by actors hired by Kinney Shoe, and hearing one remark during that play that offended her ("we be shoes"), and her becoming offended when she heard that two white female managers had dressed as African-American females at a Halloween party (she did not attend; she heard about this second-hand) are not only insufficient evidence of race discrimination to support a prima facae case, they fall significantly below the standard imposed by the Eleventh Circuit to find constructive discharge.

Likewise, Sharief's complaints about not being promoted to a larger store as a manager, the same position she held with the company, does not rise to a level of intolerable working conditions that would support the claim of constructive discharge. Of course, Defendants do not admit to ever having discriminated against Sharief, nor do Defendants admit that their promotional decisions were based on impermissible factors, like Sharief's race. However, taking Sharief's testimony in the light most favorable to her, even if her testimony were to be believed, it falls far short of what the courts require to find constructive discharge.

Accordingly, Defendant respectfully submits that Plaintiff's claim of constructive discharge must be dismissed as a matter of law.

## PLAINTIFF'S DAMAGES ARE LIMITED BY AFTER-ACQUIRED EVIDENCE

After acquired evidence indicates that Plaintiff would not have been hired had she filled out her employment application truthfully, and she would have been terminated had the company known that she had sexually harassed and retaliated against her own employee. As noted in the Statement of Undisputed Material Facts, Sharief was terminated from her employment at Jordan Marsh for assisting an associate of hers in a significant theft. She also resigned her employment from another retail establishment immediately after being suspended for three days after causing an incident with customer service. Neither of these facts were included on her application for

16

employment with Kinney Shoe, and had that information been disclosed, she would not have been hired (see Affidavit of Sharon Orlopp).

Likewise, Defendant has learned during the course of this litigation that Debra Sharief sexually harassed one of her employees, seeking to establish a sexual liaison with her, and when the employee in question refused to participate in a sexual liaison with Sharief, Sharief treated her so badly that she felt compelled to resign her position with the company. [Sworn Statement of Kim Matco] Again, had Defendant known of Sharief's actions in sexually harassing and then retaliating against one of her own employees, she would have been terminated under the company's sexual harassment policy (see Affidavit of Sharon Orlopp).

In McKennen v. National Banner Publishing Company, 513 U.S. 352, 115 S. Ct. 879, 130 L.Ed. 2d 852 (1994), the United States Supreme Court held that an employee discharged in violation of the Age Discrimination In Employment Act of 1967 was not barred from all relief because of after-acquired evidence of the employee's wrongdoing. The court went on to hold that in cases involving an employee's discharge in violation of the Age Discrimination In Employment Act, once an employer learns about employee wrongdoing that would have led to a legitimate discharge, a court, in formulating compensation for the ADEA violation, cannot require the employer to ignore the information, even if such information is acquired during the course of discovery in the suit against the employer, and might have gone undiscovered absent the suit.

In Wallace v. Dunn Construction Company, Inc., 62 F.3d 374 (11th Cir. 1995), the court held that the Supreme Court's decision in McKennen applies to cases brought under Title VII. The Wallace court also held that the reason underlying McKennen applies with equal force when the after-acquired evidence concerns an employee's fraud in the application process, rather than an employee's wrongful conduct during employment. In discussing a remedy, the court noted that if

17

plaintiff prevailed on her retaliation claim or on her Title VII claim, neither reinstatement nor front pay would be an appropriate remedy, because plaintiff would have been fired as soon as the company learned that she had lied about her drug conviction. The court also ruled that injunctive relief would not be appropriate, since plaintiff would no longer have been employed by Defendant. In Yeary v. State of Florida, Department of Corrections, 1997 U.S. Dist. LEXIS 8839, 73 Fair Emp. Prac. Cas (BNA) 1483 (M.D. Fla. 1997), the court held that since out-of-pocket losses are analogous to back pay, and future pecuniary losses are analogous to front pay, plaintiff's recovery of out-of-pocket and future pecuniary losses, if any, should be limited in the same manner that her back pay and front pay would be limited in accordance with after-acquired evidence of the plaintiff's wrongdoing.

In this case, Defendant has demonstrated that Plaintiff would not have been hired had she truthfully indicated on her employment application that she had been terminated for theft by Jordan Marsh, a retailer, and resigned from J. Byron's, immediately after being given a three-day suspension for misconduct. Likewise, Plaintiff Sharief would have been terminated under the Company's sexual harassment policies, had the Company known, during her employment, that she had sexually harassed another employee and when the employee in question refused her sexual advances, subjected her to a significant degree of retaliation to force her to resign. Accordingly, while Defendant does not believe Sharief can prevail on any of her claims, her claims for damages must be limited in accordance with the cases cited herein.

18

Respectfully submitted,
BROAD AND CASSEL

By: _____

JACK R. ELLIOTT, ESQUIRE
Florida Bar No. 251666
390 N. Orange Ave., Suite 1100
Orlando, Florida 32801
P.O. Box 4961 (32802)
Telephone: (407) 839-4200
Facsimile: (407) 425-8377
Attorneys for Defendant

19

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by U.S. mail to TALBOT W. TRAMMELL, ESQUIRE, 370 Minorca Avenue, Suite 3, Coral Gables, Florida 33134 and to MICHAEL M. TOBIN, ESQUIRE, 1099 Ponce de Leon Boulevard, Coral Gables, FL 33134, this _31st_ day of _August_, 1998.

JACK R. ELLIOTT, ESQUIRE

20